UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARY COX and JEREMY COX,

Plaintiffs,

v.

INDIANA DEPARTMENT OF CHILD
SERVICES, *et al.,*

Defendants.

Case No. 1:23-cv-00957-RLY-MG

### BRIEF IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

THEODORE E. ROKITA
Indiana Attorney General
Atty. No. 20-10517

Alexander R. Carlisle, Atty. No. 34533-49
Katherine A. Meltzer, Atty. No. 37932-49
Deputy Attorneys General

OFFICE OF THE ATTORNEY GENERAL
Indiana Gov't Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-6667
Fax: (317) 232-7979
Alexander.Carlisle@atg.in.gov
Katherine.Meltzer@atg.in.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION ............................................................................................................... 8

STATEMENT OF THE ISSUES ......................................................................................... 9

RELEVANT FACTS AND ALLEGATIONS ..................................................................... 11

LEGAL STANDARD ........................................................................................................ 15

ARGUMENT .................................................................................................................... 15

  I.  Abstention Considerations Preclude Jurisdiction by This Court ..................................... 15

    a.  *Rooker-Feldman* Applies because the Claims Are Inextricably Intertwined with the State Court Judgment ..................................................................................................... 16

    b.  *Nicole K.* Abstention Requires this Court to Withhold Adjudication for Comity ......... 21

  II.  The Claims Are Barred by Preclusion Doctrines .......................................................... 22

    a.  The Federal Claims Are Res Judicata (Claim Preclusion) ............................................. 24

    b.  The Federal Claims Are Barred by Collateral Estoppel (Issue Preclusion) ................... 28

    c.  The State Claims Are Res Judicata (Claim Preclusion) ................................................. 31

    d.  The State Claims Are Barred by Collateral Estoppel (Issue Preclusion) ....................... 34

  III.  Eleventh Amendment Immunity Bars All Claims against DCS and Any Official Capacity Claim, and the Plaintiffs Fail to State a Claim for Injunctive Relief ........................ 37

  IV.  Qualified Immunity Bars All Individual Capacity Claims ................................................ 39

  V.  The Plaintiffs Cannot Sue on Behalf of Their Adult Child ............................................... 41

  VI.  The Plaintiffs Fail to State a Claim under the Fourth Amendment .................................. 42

    a.  Some of the Fourth Amendment Claims Are Time Barred ........................................... 42

    b.  The Plaintiffs Cannot Assert an Unreasonable Seizure Claim Based on the Child's Removal ...................................................................................................................... 43

    c.  An Unreasonable Search or Seizure Claim Fails because the Plaintiffs Consented to the Defendants' Investigation ....................................................................................... 44

  VII.  The Fourteenth Amendment Claims Are Barred by Absolute Immunity for Presenting Evidence to the Court ...................................................................................................... 45

  VIII. . The Individual Defendants Are Immunized from the State Law Claims for Acting within the Scope of their Employment and Participating in the Court Proceedings ............................ 48

    a. The Defendants Acted within the Scope of their Authority ............................................. 48

    b. The Defendants Participated in the Judicial Process ....................................................... 49

CONCLUSION .................................................................................................................. 50

# TABLE OF AUTHORITIES

**Cases**

*Alderman v. United States*, 394 U.S. 165 (1969) ........................................................... 43

*Anonymous Hosp. v. A.K.,* 920 N.E.2d 704 (Ind. Ct. App. 2010) ................................... 51

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..................................................................... 39

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 36, 48

*Becker v. State*, 992 N.E.2d 697 (Ind. 2013) .......................................................... 24, 26

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................................... 15

*Blattert v. State*, 190 N.E.3d 417 (Ind. Ct. App. 2022) ................................................. 32

*Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020) ...................................... 34

*Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981) ........................................................... 46

*Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002) ......................................................... 20

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ............................................................... 48

*Brown v. Bowman*, 668 F.3d 437 (7th Cir. 2012) .......................................................... 16

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) .......................................... 34

*Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939 (7th Cir. 2013) ................................. 15

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ............................................................. 34

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ............................................. 49

*Cornell v. Miami Correctional Facility*, 2016 WL 5106952 (N.D. Ind.) ...................... 37

*Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123 (3d Cir.1997) ......... 18

*Dircks v. Indiana Department of Child Services*, 2022 WL 742435 (S.D. Ind.) ........................... 44

*Doe v. Gray*, 2022 WL 602919 (N.D. Ind.) ................................................................. 40

*Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003) ............................................................. 18, 45

*E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773 (7th Cir. 2007) ..................................... 15

*Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723 (7th Cir. 2001) ....................................... 17

*Empl. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) ...................... 34

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................................... 38

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ........................................ 16

*F.D. v. Indiana Dep't of Child Servs.,* 1 N.E.3d 131 (Ind. 2013) ................................................. 50

*George v. Smith*, 507 F.3d 605 (7th Cir. 2007) ............................................................................ 48

*Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. March 14, 2023) ........................... 17, 19, 20, 23

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................................. 39

*Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014) ............................................................................ 20

*Hickey v. O'Bannon,* 287 F.3d 656 (7th Cir. 2002) ..................................................................... 15

*Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992) ........................................................................ 46

*Houzanme v. Rush*, 2017 WL 1152951 (S.D. Ind. Mar. 28, 2017) ............................................... 17

*In re Adoption of A.N.S.,* 741 N.E.2d 780 (Ind. Ct. App. 2001) .................................................. 34

*In re Commitment of Heald*, 785 N.E.2d 605 (Ind. Ct. App. 2003) .............................................. 28

*In re D.J.*, 68 N.E.3d 574 (Ind. 2017) ......................................................................................... 26

*In re R.H.,* 55 N.E.3d 304 (Ind. Ct. App. 2016) ...................................................................... 25, 34

*In the Matter of A.C.; M.C. (Mother) and J.C. (Father) v. Indiana Department of Child Services*,

    198 N.E.3d 1 (Ind. Ct. App. 2022) ................................................................................... passim

*Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin*., 603 F.3d 365 (7th Cir.

    2010) ................................................................................................................................ 38

*J.C. v. Ind. DCS*, 208 N.E.3d 1259 (April 27, 2023) ................................................................... 22

*Jerger v. Blaize*, 41 F.4th 910 (7th Cir. 2022) ............................................................................ 44

4

*Johnson v. Sojka*, 2022 WL 815231, *1 (S.D. Ind.).............................................................. 43

*Justice v. Justice*, 303 F. Supp.3d 923 (S.D. Ind. 2018)....................................................... 50

*Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008)...................................... 20

*Kemp v. Liebel*, 877 F.3d 346 (7th Cir. 2017) .................................................................. 40

*Kirksey v. R.J. Reynolds Tobacco Co.,*168 F.3d 1039 (7th Cir. 1999) ........................... 15

*Ledford v. Rutledge*, 2018 WL 1523242 (N.D. Ind. Mar. 28, 2018) ............................. 16

*Licari v. City of Chicago*, 298 F.3d 664 (7th Cir. 2002)...................................................... 23

*Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999)......................... 16

*Matter of Eq.W. v. Indiana Department of Child Services,* 124 N.E.3d 1201 (Ind. 2019) .......... 24

*Meadows v. State of Ind.,* 854 F.2d 1068 (7th Cir. 1988)..................................................... 37

*Michael C. v. Gresbach*, 526 F.3d 1008 (7th Cir. 2008) ................................................... 45

*Millspaugh v. County Dep't of Public Welfare of Wabash County*, 937 F.2d 1172 (7th Cir. 1991) 46

*Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699 (Ind. 2012)........................ 28

*Navarette v. California*, 572 U.S. 393 (2014)................................................................... 30

*Nicole K. by next friend Linda R. v. Stigdon*, 990 F.3d 534 (7th Cir. 2021) ................................. 21

*Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001) ......................................................... 46

*Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000 (Ind. Ct. App. 2003)....................... 34

*Ridener v. Indiana Department of Child Services*, 2022 WL 2658979 (2022) ..................... 30, 47

*San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323 (2005)................... 23

*Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001) ................................................... 48

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)............................................................. 45

*Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) ..................................................... 43

*Sivard v. Pulaski Cnty.*, 17 F.3d 185 (7th Cir. 1994)........................................................ 39

*Sow v. Fortville Police Dep't*, 636 F.3d 293 (7th Cir. 2011) ........................................................ 37

*Swartz v. Heartland Equine Rescue*, 940 F.3d 387 (7th Cir. 2019) ............................................. 19

*Taylor v. Fed Nat'l Mortg. Ass'n*, 374 F.3d 529 (7th Cir. 2004) ................................................. 17

*Taylor v. St. Vincent Salem Hosp., Inc.,* 180 N.E.3d 278 (Ind. Ct. App. 2021)............................ 24

*Thompson v. Huntington,* 69 F. Supp. 2d 1071 (S.D. Ind. 1999) .................................................. 15

*Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034 (Ind. 1993) .................................................. 33

*Towne & Terrace v. City of Indianapolis*, 170 N.E.3d 659 (Ind. Ct. App. 2021) ........................ 25

*United States v. Ahmad*, 21 F.4th 475 (7th Cir. 2021) ........................................................... 44, 45

*United States v. Griffin*, 530 F.2d 739 (7th Cir. 1976) .................................................................. 44

*United States v. Jerez*, 108 F.3d 684 (7th Cir. 1997)..................................................................... 45

*United States v. Kashamu*, 656 F.3d 679 (7th Cir. 2011) ........................................................ 23, 37

*United States v. McGraw*, 571 F.3d 624 (7th Cir. 2009).............................................................. 45

*VanWinkle v. Nichols*, 2015 WL 9275671 (S.D. Ind.)................................................................... 46

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ......................................................... 37

*Williams v. Indiana Department of Child Services*, 2019 WL 3003906 (N.D. Ind.) ................... 43

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)............................................................ 41

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663 (7th Cir. 2008) .......................................................................................................................................... 15

*Xiong v. Wagner*, 700 F.3d 282 (7th Cir. 2012)............................................................................ 40

*Young v. Murphy,* 90 F.3d 1225 (7th Cir. 1996) ..................................................................... 17, 43

**Statutes**

28 U.S.C. § 1738.............................................................................................................................. 23

42 U.S.C. § 1983...............................................................................................................................11

42 U.S.C. § 2000bb ............................................................................................. 34

Indiana Code § 31-25-2-2.5 ...........................................................................11, 50

Indiana Code § 31-30-1-1(a)(2) ....................................................................... 25

Indiana Code § 31-33-6-1 ..............................................................................11, 50

Indiana Code § 31-33-6-2 .............................................................................. 50, 51

Indiana Code § 31-34-1-1 .................................................................................. 35

Indiana Code § 31-34-1-6 ..........................................................................8, 11, 19

Indiana Code § 31-34-9-3 .................................................................................. 12

Indiana Code § 33-28-1-2 .................................................................................. 25

Indiana Code § 34-11-2-4 .................................................................................. 43

Indiana Code § 34-13-3-5 ..............................................................................11, 49

Indiana Code § 34-13-9-8(b) ............................................................................. 32

**Rules**

Indiana Rule of Appellate Procedure 5(a) ................................................... 25, 34

Indiana Rule of Trial Procedure 54(a) ........................................................ 25, 34

# INTRODUCTION

This case arises from a Department of Child Services abuse and neglect investigation into the Plaintiffs, Mary and Jeremey Cox, as to their minor son, A.C., and the subsequent CHINS disposition adjudicated by the juvenile court. During the dispositional proceedings before the juvenile court, the Plaintiffs did not contest that their minor child was a child in need of services under Indiana Code § 31-34-1-6 ("CHINS-6") for posing a substantial danger to the child's own health and for not receiving the care, treatment, or rehabilitation that was unlikely to be provided without the coercive intervention of the court. *In the Matter of A.C.; M.C. (Mother) and J.C. (Father) v. Indiana Department of Child Services*, 198 N.E.3d 1 (Ind. Ct. App. 2022), trans. denied, 208 N.E.3d 1259 (April 27, 2023), petition for cert. forthcoming, No. 23A32.[1] Based on the Plaintiffs' failure to dispute A.C.'s CHINS-6 admission, the CHINS court adjudicated the child a CHINS and entered a dispositional decree directing the continued placement of the child in a kinship home with the eventual goal of family reunification. *Id*. at *11. The juvenile court's order was grounded in findings showing that "this is an extreme case where Child has reacted to a disagreement with the Parents by developing an eating disorder and self-isolating, which seriously endangers Child's physical, emotional, and mental well-being." *Id*. As the Court of Appeals of Indiana put it in affirming the CHINS disposition, "the trial court's focus was clearly on Child's medical and psychological health needs, and the court's decision to continue Child's placement outside the home is consistent with the CHINS-6 statute." *Id*.

The Plaintiffs, though, have attempted to turn the CHINS case into something it is not. Despite losing their appeal of the CHINS disposition before the state court of appeals, and despite the Court of Appeals rejecting the identical First Amendment religion and speech and

---

[1] *https://www.supremecourt.gov/search.aspx?filename=/docket/DocketFiles/html/Public/23A32.html* .

Fourteenth Amendment substantive due process claims that they raise in this complaint, the Plaintiffs seek to make this case about A.C.'s transgender identity and their own religious beliefs. They claim that the "Defendants…initiated an investigation of the Parents because they were referring to their child, A.C., in a manner consistent with A.C.'s biological sex instead of using cross-gender pronouns or a name consistent with A.C.'s biological sex." ECF 30 at 2. From this faulty premise, the Plaintiffs raise eleven claims arising under federal and state law – and among the federal claims are the same claims presented to and rejected by the Court of Appeals in a published opinion. *Matter of A.C.*, 198 N.E.3d 1.

But the Plaintiffs' allegations are contrary to the holding of the Court of Appeals. *Id*. The effect of the *Matter of A.C.* is that the claims and issues raised in this complaint are res judicata. This Court is unable to disturb the finding and conclusions of the state appeals court. Further, the claims are barred by various immunities and fatal procedural defects. All claims against the Defendants, the Indiana Department of Child Services, Family Case Manager Candace Sexton, and Supervisor Annette Lehman, should be dismissed with prejudice.

## STATEMENT OF THE ISSUES

This motion to dismiss presents numerous threshold jurisdictional and procedural issues that require resolution before the merits of the Plaintiffs' allegations can be considered. The Plaintiffs already presented identical federal constitutional claims in state court, and the Court of Appeals rejected those claims and granted judgment in favor of the Indiana Department of Child Services. This case thus presents abstention and preclusion issues. Moreover, the claims are barred by various federal and state immunities. And the Plaintiffs fail to state plausible claims for relief. The Court must resolve these procedural issues before this case can advance to the merits. The threshold issues presented in this motion are:

1.     Whether the *Rooker-Feldman* doctrine – or general principles of comity – precludes this Court from exercising jurisdiction over the case given the opinion rendered by the Indiana Court of Appeals that affirmed the CHINS court and found against the Plaintiffs on identical federal constitutional claims presented here. *In the Matter of A.C.; M.C. (Mother) and J.C. (Father) v. Indiana Department of Child Services*, 198 N.E.3d 1 (Ind. Ct. App. 2022), trans. denied, 208 N.E.3d 1259 (April 27, 2023), petition for cert. forthcoming, No. 23A32.[2]

2.     Whether the claims against DCS and the individual Defendants in their official capacities are barred by sovereign immunity and the Eleventh Amendment, and whether the Plaintiffs fail to state a claim for injunctive relief.

3.     Whether the individual Defendants are entitled to qualified immunity for lack of clearly established law holding that parents have the constitutional right to be free from state intervention in family relations where their child's wellbeing was seriously endangered by an eating disorder and self-isolation resulting from a disagreement between the parents and the child over the child's identity.

4.     Whether the claims are res judicata or barred by collateral estoppel given the outcome of the CHINS adjudication and appeal.

5.     Whether the Plaintiffs can bring this action on behalf of their adult child, A.C.

6.     Whether the Plaintiffs failed to state a claim for relief under the Fourth Amendment where (1) they were not seized and (2) they consented to the DCS investigation.

7.     Whether the Defendants are absolutely immune to the Fourteenth Amendment claims for presenting evidence to the court.

---

[2] *https://www.supremecourt.gov/search.aspx?filename=/docket/DocketFiles/html/Public/23A32.html* .

8.      Whether the individual Defendants are immune from the state law claims under Indiana Code §§ 31-25-2-2.5, 31-33-6-1(a)(6), and 34-13-3-5(c).

**RELEVANT FACTS AND ALLEGATIONS[3]**

This case arises from an undisputed adjudication of the Plaintiffs' child, A.C., as a child in need of services ("CHINS") under Indiana Code § 31-34-1-6 (the "CHINS-6" statute). *See In the Matter of A.C.; M.C. (Mother) and J.C. (Father) v. Indiana Department of Child Services*, 198 N.E.3d 1 (Ind. Ct. App. 2022). Under the CHINS-6 statute, a child is in need of services where (1) the child substantially endangers the child's own health or the health of another individual; (2) the child needs care, treatment, or rehabilitation that (3) the child is not receiving; and (4) the services are unlikely to be provided or accepted without the coercive intervention of the court. The trial court adjudicated A.C. a CHINS-6 based upon evidence that A.C. "had an eating disorder that jeopardized Child's health and the eating disorder was fueled partly because of [Child's] self-isolation from [the Parents] which is a behavior which is likely to reoccur if Child is placed back in the Parents' home." *Matter of A.C.*, 198 N.E.3d at 8 (internal quotations omitted). The child admitted to the factual basis for the CHINS-6 finding, and the Plaintiffs verified that they had no objection to the admission. *Id.*

The CHINS case was initiated after DCS received a report from the child's school claiming that A.C. did not feel safe at home. ECF 30 ¶ 53. Because of the report, DCS opened an investigation; Defendant Family Case Manager ("FCM") Candace Sexton initiated a call with Plaintiff Mary Cox to discuss their concerns about A.C. and to disclose the note. *Id.* ¶¶ 51-60. Plaintiffs informed Defendant Sexton that they were working with A.C. in attempt to navigate the disagreement over their religious beliefs and gender identity and that they were doing so in a

---

[3] As required on a motion to dismiss, the allegations of the complaint are taken as true only for purposes of this motion. The Defendants reserve the right to dispute those allegations.

manner consistent with those religious beliefs and best judgment. *Id*. ¶ 55. At the conclusion of the call, Defendant Sexton asked if she could visit the Plaintiffs' residence, and the Plaintiff agreed. *Id*. ¶ 60. On May 17, 2021, Defendant Sexton arrived at the Plaintiffs' residence and interviewed the Plaintiffs' minor children, in the presence of the parents. *Id*. ¶¶ 61-62. A.C. disclosed to Defendant Sexton that A.C. did not feel respected or emotionally supported at home because the Plaintiffs did not use A.C.'s preferred name and pronouns. *Id*. ¶ 63. "The Defendants determined, in the course of their investigation, to expand the allegations to include educational and medical neglect." *Id*. ¶ 80.

On June 1, 2021, the Plaintiffs received a summons with a CHINS petition and the supporting documentation from Defendants Sexton and Lehman. *Id*. ¶ 76. A CHINS petition is a verified court filing alleging that a child is in needs of services. Indiana Code § 31-34-9-3. In the Defendants' presentation of evidence to the state court, they focused on A.C.'s educational, medical, and mental health treatment. *Id*. ¶ 78. The Plaintiffs claim that the Defendants presented false or misleading evidence to the CHINS court. *Id*. ¶¶ 81 *et seq*.

At the initial hearing on June 2, 2021, the trial court found probable cause to believe that A.C. was in need of services "and that Child's detainment was necessary to safeguard Child's health." *Matter of A.C.*, 198 N.E.3d at *7. The trial court decided to remove A.C. from the custody of the Plaintiffs. ECF 30 ¶ 112. The CHINS court found "it was in Child's best interest to be removed from the home due to the Parents' inability, refusal or neglect to provide shelter, care, and/or supervision at the present time." *Matter of A.C.*, 198 N.E.3d at *7. The Defendants recommended that A.C. be placed in kinship placement that would affirm A.C.'s identity. ECF 30 ¶ 122. The trial court adopted the Defendants' recommendation. *Id*. A.C. remained out of the

Plaintiffs' custody and care throughout this period, but the Plaintiffs were given a few hours of visitation on one day per week. *Id.* ¶ 121.

On November 15, 2021, the trial court held a hearing, "at which the parties informed the court that they had reached an agreement…[to] proceed under the CHINS-6 statute." *Matter of A.C.*, 198 N.E.3d at *8. "Child then admitted to being a CHINS-6, and the Parents verified that they had no objection to Child's admission." *Id.* "The court found a factual basis for the admission, accepted the admission, and adjudicated Child a CHINS." *Id.* The CHINS court entered a dispositional order, "finding that Child was a CHINS-6 because Child admitted that Child had an eating disorder that jeopardized Child's health and the eating disorder was fueled partly because of [Child's] self-isolation from [the Parents] which is a behavior which is likely to reoccur if Child is placed back in the Parents' home." *Id.* (internal citation omitted). "The court also found that remaining in the Parents' care would be contrary to Child's welfare based on the allegations that Child admitted to and ordered that Child should continue to be removed from the Parents' home." *Id.*

The CHINS court entered a dispositional order, "in which it found [1] that Child needed services to treat anorexia as well as individual and family therapy to ensure emotional, mental, and psychological safety and well-being[,] [2] that the Parents' participation was necessary to ensure that the child receives adequate treatment for anorexia and that they support and protect the child's emotional, mental, and psychological safety and well-being[,] and [3] that child shall remain in the current home or placement, with supervision by DCS." *Id.* (internal citations omitted). The court left in place an earlier order prohibiting the Plaintiffs from discussing A.C.'s identity during visitation but confirmed that it could be discussed at court-ordered family therapy. *Id.*

The trial court found that the harm the child was suffering stemmed, at least in part, from a disagreement between the Plaintiffs and the child regarding the child's lifestyle choices, but that the goal of the CHINS-6 adjudication was to provide for family reunification and court-ordered services that would benefit the child's welfare. *Id*. at *11. The CHINS court found that although the parents and the child may have a disagreement about the child's lifestyle choices, "when…as in this case there is a clear nexus between [the child's lifestyle choices] and the medical and psychological issues that the child is having that is when we get issues that we have here today that the State is now involved in[,] and because of those issues the child is a ward of DCS and those decisions are going to have to be made through the Court." *Id*.

The Plaintiffs appealed the CHINS court's final dispositional decree and the initial/detention order to the Court of Appeals of Indiana. The Plaintiffs attacked the sufficiency of the evidence below and raised constitutional challenges that are identical to the ones presented in this complaint: First Amendment violations of their religion and speech rights and a Fourteenth Amendment violation of their substantive due process rights. *Id*. at *14-19. The Court of Appeals affirmed the CHINS court and wholly rejected the Plaintiffs' constitutional challenges. *Matter of A.C*, 198 N.E.3d 1.

The Indiana Supreme Court denied Plaintiffs' transfer petition. 208 N.E.3d 1259 (2023). Plaintiffs have indicated they intend to seek U.S. Supreme Court review. See Pet. Application for Extension of Time, No. 23A32 (U.S.).[4] Therefore, *Matter of A.C.* is a binding and enforceable court order that the Plaintiffs seek to overturn in this lawsuit.

---

[4] *https://www.supremecourt.gov/search.aspx?filename=/docket/DocketFiles/html/Public/23A32.html*

**LEGAL STANDARD**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 667 (7th Cir. 2008). When considering such a motion, a court must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the Plaintiff. *See Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 946 (7th Cir. 2013).

However, the pleading standard demands more than a bare, the defendant-unlawfully-harmed-me accusation. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-557 (2007). The Seventh Circuit has recognized that "it is not enough for a Complaint to avoid foreclosing possible bases for relief; it must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 777 (7th Cir. 2007) (citing *Bell Atlantic,* 550 U.S. at 561-62). In responding to a motion to dismiss, a "plaintiff must respond meaningfully to the motion to dismiss, clearly establishing a legal basis for her claim, in order to stave off dismissal." *Thompson v. Huntington,* 69 F. Supp. 2d 1071, 1074 (S.D. Ind. 1999); *see Kirksey v. R.J. Reynolds Tobacco Co.,*168 F.3d 1039, 1041 (7th Cir. 1999). Courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon,* 287 F.3d 656, 659 (7th Cir. 2002).

**ARGUMENT**

**I.**   **Abstention Considerations Preclude Jurisdiction by This Court**

The Court lacks jurisdiction over this case for two reasons. First, *Rooker-Feldman* precludes jurisdiction because the claims are inextricably intertwined with the state court

15

judgments. Second, even if *Rooker-Feldman* does not preclude jurisdiction, *Nicole K.* abstention requires the Court to defer to the adjudication of the state courts for reason of comity: the state forum is the most appropriate venue for making child welfare determinations.

### a. *Rooker-Feldman* Applies because the Claims Are Inextricably Intertwined with the State Court Judgment

This Court lacks jurisdiction over this litigation because the Indiana state courts already issued final and binding decisions resolving these matters. The Plaintiffs' injuries were effected by those orders, in particular by the CHINS court's detention order directing the removal of A.C. and proscribing the Plaintiffs' speech. ECF 30 ¶ 111. To find for the Plaintiffs in this lawsuit, the Court would have to review and disturb the state court orders. The state court orders thus are inextricably intertwined with the federal lawsuit. *Rooker-Feldman* precludes this Court from exercising jurisdiction over this litigation.

The *Rooker-Feldman* doctrine "prevents district courts from adjudicating 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Ledford v. Rutledge*, 2018 WL 1523242, at *7 (N.D. Ind. Mar. 28, 2018) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Pursuant to the *Rooker-Feldman* doctrine, "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The *Rooker-Feldman* doctrine arises in two instances: "[t]he first involves a plaintiff's request of a federal district court to overturn an adverse state court judgment, or [t]he second, and more difficult instance, involves federal claims that were not raised in state court or do not on their face require review of a state court's decision." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (quoting *Taylor v. Fed Nat'l Mortg. Ass'n*, 374 F.3d

529, 532 (7th Cir. 2004)). Importantly, "[i]n this latter instance, *Rooker–Feldman* will act as a jurisdictional bar if those claims are 'inextricably intertwined' with a state court judgment." *Id.* (quoting *Taylor*, 374 F.3d 529, 533).

Whether a federal claim is inextricably intertwined with a state court judgment "hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.*; see also, *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. March 14, 2023). "An alleged injury is 'independent' if the state court was acting in a non-judicial capacity when it affected the plaintiff—for example, if the state court was 'promulgating rules regulating the bar.'" *Id.* (citing *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001)); see also, *Hadzi-Tanovic*, 62 F.4th at 399. "The pivotal question is whether the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment." *Houzanme v. Rush*, 2017 WL 1152951, at *4 (S.D. Ind. Mar. 28, 2017) (internal citations omitted). Those "constitutional claims that are 'inextricably intertwined' with the state court judgments of necessity call upon the district court to review the state court decision and are thus beyond the district court's jurisdiction." *Edwards v. Ill. Bd. Of Admissions to Bar,* 261 F.3d at 729 (quoting *Young v. Murphy,* 90 F.3d 1225, 1231 (7th Cir. 1996)); see also, *Hadzi-Tanovic*, 62 F.4th at 399.

Initially, although they do not ask the court expressly to overturn *Matter of A.C.*, the Plaintiffs have implicitly done so in this lawsuit because this court cannot rule in their favor without overturning *Matter of A.C.*, where the Court of Appeals adjudicated the same federal claims brought here in favor of DCS. Indeed, the Plaintiffs have indicated their intent to have a federal court overturn *Matter of A.C.* by initiating the cert procedure in the Supreme Court. *M.C.,*

*et vir v. Indiana Department of Child Services*, case no. 22A-JC-49. Therefore, this court lacks jurisdiction under the first prong of *Rooker-Feldman*.

Moreover, the Plaintiffs' claims fail under the second prong because they are inextricably intertwined with the state court orders for three reasons. First, the injuries arise from the state court judgment. The Plaintiffs' alleged injuries are not independent of the CHINS court's orders or *Matter of A.C.* Like in *Hadzi-Tanovic*, the Plaintiffs trace their alleged injuries—both the interference with their family relations and their speech/religion rights—back to the CHINS court's initial detention decision: "At the initial court hearing on June 2, 2021, the trial court removed A.C. from the custody of the Parents and barred the parents from speaking about the topic of transgenderism with A.C. based on the misrepresentations of the Defendants." ECF 30 ¶ 111. The CHINS court's detention order is the cornerstone of this lawsuit. Without the CHINS court's probable cause finding, the Plaintiffs would not have suffered their alleged injury: the child would not have been removed.

Critically, there is no allegation that the child was removed without a court order. On this complaint, DCS did not intervene in the Plaintiffs' family in any constitutionally significant manner prior to the initial detention order. As the Plaintiffs allege, the child was not removed until after the court ordered the detention. Thus, any action taken by DCS prior to the court order cannot be described as "interference" in the family relationship; it was merely an investigation of a report of abuse/neglect. But there is no constitutional right to be free from a child abuse investigation. "The right to familial integrity ... does not include a right to remain free from child abuse investigations." *Doe v. Heck*, 327 F.3d 492, 523 (7th Cir. 2003) (quoting *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125 (3d Cir.1997)). Thus, the Plaintiffs' alleged injuries were "effected" by the CHINS court's removal order. "Where, as

18

here, the plaintiff's injury is 'effectuated' by the state court judgment, the *Rooker-Feldman* doctrine deprives lower federal courts of jurisdiction." *Hadzi-Tanovic*, 62 F.4th at 401, 404. The Plaintiffs cannot invoke this Court's jurisdiction simply because they are unhappy with the ruling of the CHINS court that effected A.C.'s removal.

Second, adjudicating the claims here would require the court to disturb the factual underpinnings of the CHINS court's orders. The removal order required the Court to make a probable cause finding that the child was in need of services and that the coercive intervention of the state was necessary. *Matter of A.C.*, 198 N.E.3d at *7, *10 (citing Ind. Code § 31-34-1-6). To find for the Plaintiffs, this Court would have to disturb the probable cause finding of the CHINS court. But that would be impermissible. *Hadzi-Tanovic*, 62 F.4th at 401 (citing *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (*Rooker-Feldman* barred jurisdiction where finding for plaintiffs, who alleged that their animals were seized in violation of Fourth and Fourteenth Amendments, would "call into question the state court's judgment that there was probable cause the animals were being neglected")). This case cannot proceed here without the Court reviewing the state court decisions and rejecting the CHINS court's probable cause finding.

Third, adjudicating the claims would require the Court to engage in constitutional analysis already performed by the Court of Appeals. To adjudicate the Plaintiffs' claims, this Court would have to review *Matter of A.C.* and reject its reasoning. The Court of Appeals found that the Plaintiff's constitutional claims were meritless based on its interpretation of the CHINS-6 statute, under which the CHINS court found that the coercive intervention of the state was necessary to provide for the welfare of the child. So for this court to find in the Plaintiffs' favor, "the federal court would have to find that the state court erred in applying state family law."

*Hadzi-Tanovic*, 62 F.4th at 401. This it cannot do. Therefore, the claims here are inextricably intertwined with the state court judgments.

It is true that the Seventh Circuit in *Hadzi-Tanovic* recognized that "a handful of decisions from this court have held that *Rooker-Feldman* does not apply where plaintiffs seek damages for injuries caused not by state court corruption but by the fraudulent conduct of state court opponents," including one case in the child removal context. *Id*. at 406 (citing *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002)). But *Brokaw* should be distinguished. In *Brokaw*, a child was removed initially without a court order and later the court ordered the child returned home – thereby vacating the prior detention order. *Brokaw*, 305 F.3d at 662.

Here, by contrast, A.C. was removed pursuant to a court order, ECF 30 ¶ 111, and the court entered a final dispositional order affirming that A.C. was a child in need of services, *Matter of A.C.*, 198 N.E.3d at *8. That order has not been vacated. So like the plaintiffs in *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604–05 (7th Cir. 2008), and *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014), these Plaintiffs were not allegedly injured until the court ordered the detention of A.C. *Hadzi-Tanovic*, 62 F.4th at 407 (citing *Kelley* and *Harold*). In *Kelley*, the plaintiffs claimed that the were injured by defendants' fraudulent representations to the court for attorney's fees, but not by the court's order to pay. *Kelley*, 548 F.3d at 604-05. But the Seventh Circuit held that Rooker-Feldman nonetheless barred the claims because "defendants needed to prevail in state court in order to capitalize on the alleged fraud, so the "claims that plaintiffs bring ultimately require us to evaluate the state court judgments." *Id*. at 605. And in *Harold*, the plaintiffs brought a claim under the Fair Debt Collection Practices Act that the defendant collector made false statements during a state garnishment proceeding. *Harold*, 773 F.3d at 886. *Rooker-Feldman* also barred that claim, though, because the plaintiff was not injured "until the

state judge ruled against" the plaintiff; it was the order that caused the alleged injury. *Id. Kelley* and *Harold* are in contrast to *Brokaw*, then, where there was no final order adverse to the federal plaintiffs for the court to disturb; the detention order had been vacated.

Here, there are final CHINS court orders (the initial/detention order and the dispositional order) and a published Court of Appeals opinion adverse to the plaintiffs that this Court would have to disturb, or at least contradict, to find in their favor. That is impermissible under *Rooker-Feldman*. Accordingly, the Court lacks jurisdiction over these claims.

### b. *Nicole K.* Abstention Requires this Court to Withhold Adjudication for Comity

Even if *Rooker-Feldman* does not bar the claim, the court should still decline to exercise jurisdiction over this case as a discretionary matter under *Nicole K v. Stigdon*, in which the Seventh Circuit held that comity concerns underlie the abstention analysis in the child welfare context. There, the court held: "Principles of comity entitle the states to make their own decisions, on federal issues as well as state issues, unless there is some urgent need for federal intervention." *Nicole K. by next friend Linda R. v. Stigdon*, 990 F.3d 534, 537-38 (7th Cir. 2021). Although the Court of Appeals of Indiana decided questions of federal constitutional law, this was at the invitation of the Plaintiffs. And comity requires lower federal courts to give full faith and credit to state court adjudications of both state and federal law. "Many a federal issue will arise in the resolution of a proceeding under state law, but the norm is that the state tribunal handles the entire proceeding, with review of the federal question (if one matters in the end) by the Supreme Court rather than a federal district judge." *Id.*

*Nicole K.* abstention bars this lawsuit. The Court of Appeals opinion in *Matter of A.C.* is grounded in that court's interpretation of Indiana's CHINS statutes, in particular Ind. Code § 31-34-1-6. *Matter of A.C.*, 198 N.E.3d at *14 ("The unchallenged CHINS-6 adjudication establishes

that the State has a compelling interest in protecting Child's welfare"). To find for the Plaintiffs

on any of their claims, this court would have to disregard or overturn the CHINS court's finding

that "the coercive intervention of the court" was necessary to protect A.C. was erroneous. This is

because that finding establishes that the state's intervention was necessary to protect the welfare

of the child, and the Plaintiffs' claims cannot succeed unless they prove that state interference in

their family relationship or speech rights was unwarranted. But the federal district court under

*Nicole K.* may not question the state court's interpretation of its child welfare laws.

The state courts are best equipped to interpret their child welfare laws in the context of

the federal constitution. *See Matter of Guardianship of Luis*, 114 N.E.3d 855, 858 (Ind. Ct. App.

2018) (in hybrid federal-state special immigrant juvenile ("SIJ") cases, "[t]he SIJ statute affirms

the institutional competence of state courts as the appropriate forum for child welfare

determinations regarding abuse, neglect, or abandonment, and a child's best interests"). The

Plaintiffs urge this Court to interfere with the Indiana state court's adjudication of a child welfare

case by framing the issues as independent violations of the federal constitution. But because the

focus of this case "was clearly on Child's medical and psychological health needs," *Matter of

A.C.*, 198 N.E.3d at 811—that is, the welfare of the child—the state venue was the best forum for

adjudication. Comity dictates that this Court abstain from interfering with Indiana's adjudication

of its child welfare laws.

## II.    The Claims Are Barred by Preclusion Doctrines

The federal claims are barred by claim preclusion or issue preclusion, based on the

October 21, 2022, Opinion of the Court of Appeals of Indiana in *In the Matter of A.C.; M.C.

(Mother) and J.C. (Father) v. Indiana Department of Child Services*, 198 N.E.3d 1 (Ind. Ct. App.

2022), trans. denied, *J.C. v. Ind. DCS*, 208 N.E.3d 1259 (April 27, 2023), petition for cert.

forthcoming, No. 23A32. In that order, the Plaintiffs – by their same counsel who has appeared in this case – appealed the CHINS court's "dispositional order…following their child A.C.'s (Child) admission that Child is a child in need of services (CHINS) pursuant to Indiana Code Section 31-34-1-6 (CHINS-6) because Child was substantially endangering Child's own health." *Id*. In the appellate decision, the Court of Appeals affirmed the CHINS court's dispositional order and rejected the Plaintiffs' arguments that the dispositional order violated the Plaintiffs' Fourteenth Amendment right to the care, custody, and control of their child; their First Amendment rights to Free Exercise; and their First Amendment right to freedom of speech. In so holding, the Court conclusively established certain facts that are dispositive of all claims here and which cannot be relitigated before this Court.

This Court must give full faith and credit to the prior Indiana Court of Appeals opinion. *See Matter of A.C.*, 198 N.E.3d 1 (Ind. Ct. App. 2022). Pursuant to the United States Constitution's Full Faith and Credit Clause and its implementing statute, 28 U.S.C. § 1738, "federal courts must give state court judgments the same preclusive effect they would have in state court." *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). It is well settled that this statute encompasses the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 336 (2005). Thus, when res judicata and/or collateral estoppel apply, federal courts are duty bound to comply with the state's preclusion rules. *United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011). Therefore, this Court must look to Indiana law to determine the preclusive effect of the prior Indiana Court of Appeals opinion to Plaintiffs' state law claims here. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 (7th Cir. 2023) ("State law determines the finality of a state judicial decision") (internal citations omitted).

### a.   The Federal Claims Are Res Judicata (Claim Preclusion)

*Matter of A.C.* precludes the Plaintiffs from relitigating the Fourteenth Amendment claim
(Counts One, Two, and Four) and the First Amendment claims (Counts Seven through Ten). The
Court of Appeals of Indiana rejected those claims when the Plaintiffs presented them on appeal.
Under Indiana law, res judicata (claim preclusion) prevents "repetitious litigation of disputes that
are essentially the same, by holding a prior final judgment binding against both the original
parties and their privies." *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013). "Similar to double
jeopardy in the criminal context, res judicata operates to prevent a party from receiving the
proverbial 'second bite at the apple.'" *Matter of Eq.W. v. Indiana Department of Child Services,*
124 N.E.3d 1201, 1213 (Ind. 2019) (citations omitted). Claim preclusion bars successive
litigation when "a particular issue is adjudicated and then put in issue in a subsequent suit on a
different cause of action between the same parties or their privies." *Eq.W.,* 124 N.E.3d at 1213.
The following four elements must be established to show claim preclusion applies to bar a
subsequent action: (1) the former judgment must have been rendered by a court of competent
jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now
in issue was or might have been determined in the former suit; and (4) the controversy
adjudicated in the former suit must have been between the parties to the present action or their
privies. *Id.* (citations omitted). Once res judicata is raised and proven by a party, "a court does
not have discretion to ignore the doctrine," as res judicata "supersedes [discretion] and compels
judgment." *Id.*; *see also Taylor v. St. Vincent Salem Hosp., Inc.,* 180 N.E.3d 278, 286 (Ind. Ct.
App. 2021) (internal citations omitted). As "CHINS proceedings are civil actions," this essential
doctrine applies in the CHINS context. *Eq.W.,* 124 N.E.3d at 1209.

The first two elements of claim preclusion are easily satisfied. First, Plaintiffs appealed from a dispositional order issued by Madison County Circuit Court, under cause no. 48C02-2105-JC-143, which is a "final appealable order from a CHINS proceeding because it finally determines the rights of the parties." *In re R.H.,* 55 N.E.3d 304, 307–08 (Ind. Ct. App. 2016); *see also* Ind. R. Trial P. 54(a)*; Matter of A.C.*, 198 N.E.3d 1, 6 (Ind. Ct. App. 2022). The trial court unquestionably had original general jurisdiction to issue the dispositional order. Indiana Code § 33-28-1-2. Indeed, the juvenile court also had exclusive jurisdiction over the CHINS proceeding, pursuant to Indiana Code § 31-30-1-1(a)(2). Plaintiffs then appealed the dispositional order to the Indiana Court of Appeals, which acted well within their jurisdiction and affirmed the trial court and rejected Plaintiff's constitutional and other challenges to the CHINS determinations and continued placement outside the home, on October 21, 2022, and rehearing was denied on December 22, 2022. *Matter of A.C.*, 198 N.E.3d at 1; *see also* Ind. R. App. P. 5(a). The Indiana Supreme Court then denied transfer on April 27, 2023. *Matter of A.C.*, 198 N.E.3d 1 (Ind. Ct. App. 2022), *reh'g denied* (Dec. 22, 2022), *transfer denied sub nom. J.C. v. Indiana Dep't of Child Servs.*, 208 N.E.3d 1259 (Ind. 2023). Therefore, there was undeniably a final judgment on the merits rendered by state courts of competent jurisdiction, satisfying the first and second res judicata elements. *Towne & Terrace v. City of Indianapolis*, 170 N.E.3d 659, 661–62 (Ind. Ct. App. 2021) (acknowledging that a transfer denial from the Indiana Supreme Court represents a final decision).

The fourth res judicata element is also satisfied because the juvenile court's judgments and rulings and the Indiana Court of Appeals opinion were determined on the merits between the same parties or privies involved in this relitigation. "[A] 'privy' is one who after rendition of [a] judgment has acquired an interest in the subject matter affected by the judgment," or "whose

interests are represented by a party to the action." *Becker v. State*, 992 N.E.2d 697, 700–01 (Ind. 2013). This element is satisfied. In this lawsuit, DCS is the named Defendant for some of Plaintiffs' claims and was also the Petitioner-Appellee for purposes of the prior state action and opinion. And as to any claim brought here against Defendants Sexton or Lehman, their interests are shared by DCS and were represented by DCS in the state court proceedings and thus Sexton and Lehman are privies to DCS. Accordingly, the fourth element of claim preclusion is satisfied.

Finally, the third element is satisfied because the state appellate court already adjudicated the same claims brought in this suit. First, the Court of Appeals considered and rejected the Plaintiffs' claims that the CHINS proceedings violated their Fourteenth Amendment rights to the care, custody, and control of their child. *Matter of A.C.*, 198 N.E.3d at *14-15. The court rejected that claim, holding that the Plaintiffs' failure to contest the CHINS-6 adjudication was dispositive: "[T]he CHINS-6 adjudication establishes that Child substantially endangers Child's own health and needs care, treatment, and rehabilitation that Child is not receiving, and that the coercive intervention of the court is necessary to ensure that Child engages in needed treatment." *Id*. at *14-15. The Court of Appeals further held, "As our supreme court has observed, the CHINS element that the care, treatment, or rehabilitation that the child needs is unlikely to be provided or accepted without the coercive intervention of the court "guards against unwarranted State interference in family life." *In re D.J.*, 68 N.E.3d 574, 580 (Ind. 2017). *Id*. at *14-15. This same reasoning applies equally to all Fourteenth Amendment claims brought here (Counts One, Two, and Four). The uncontested CHINS-6 disposition was affirmed. *Id*. at *8-14. That disposition was found not to violate the Plaintiffs' Fourteenth Amendment rights as a matter of law. *Id*. at *14-15. There was no "unwarranted State interference in [Plaintiffs'] family life." *Id*. at *15. That is dispositive of all Fourteenth Amendment claims.

26

Second, the appellate court considered and rejected the Plaintiffs' First Amendment claims. *Id*. at *15-19. As to the religion claims, the Court of Appeals rejected the Plaintiffs' free exercise challenge. The Plaintiffs argued that the state's actions "burdened [their] religious beliefs by forcing them to choose between (1) violating their religious beliefs by affirming their child's transgender ideology or (2) losing custody of [Child] with the knowledge that the state's placement would directly contradict their religious beliefs." *Id*. at *16. The Court of Appeals held that the Dispositional Order did not impose a substantial burden on the Plaintiffs' exercise of religion because the order was based on the child's medical and psychological needs, not on the Plaintiffs' disagreement with transgender identity. *Id*. The court further held that the child's continued placement outside the Plaintiffs' home did not violate the Free Exercise Clause because the "CHINS-6 adjudication and the factual basis establish[ed] that Child's health was substantially endangered and that the care, treatment, and rehabilitation would likely not occur without the court intervention"; therefore, the state had a compelling interest in protecting the child's physical and mental health. *Id*. at *17. The court also held that the continued detention was narrowly tailored. *Id*.

As to the speech claims, the Court of Appeals also rejected the Plaintiffs' free speech challenge. *Id*. at *17-19.  The Court held that the restriction on the Plaintiffs' ability to discuss their child's transgender identity was not an impermissible prior restraint because the basis of the CHINS-6 dispositional order was that the child had an untreated eating disorder that was endangering the child's health, and the court recognized that the child's transgender identity was connected to the eating disorder and self-isolation. *Id*. at *19. "Thus, the limitation of discussion of this topic directly targets the State's compelling interest in addressing Child's eating disorder and psychological health." *Id*. The court also found the restriction to be narrowly tailored. *Id*.

27

Therefore, the Plaintiffs' First Amendment claims are res judicata. The religion claims (Counts Seven and Ten) were rejected by the Court of Appeals based on the Plaintiffs' failure to contest the CHINS-6 adjudication. Under Indiana child welfare law, the CHINS-6 adjudication conclusively establishes that the state had a substantial interest interfering in the Plaintiffs' family life. The speech claims (Counts Eight and Nine) were also rejected. The state's restriction on the Plaintiffs' ability to discuss the child's transgender identity was a permissible restraint related to the child's eating disorder and was narrowly tailored. This Court does not have power to disturb the opinion in *Matter of A.C.*. Counts Seven through Ten are res judicata.

### b.   The Federal Claims Are Barred by Collateral Estoppel (Issue Preclusion)

*Matter of A.C.* estops the Plaintiffs from relitigating certain issues that are dispositive to the Fourteenth and First Amendment claims presented here. Specifically, the Plaintiffs are collaterally estopped from contesting: (1) the CHINS court's probable cause determination as to the CHINS-1 and CHINS-2 allegations, (2) the CHINS court's continued detention order; and (3) the CHINS court's CHINS-6 adjudication. The Court of Appeals of Indiana found in favor of the state on all of these issues. Since the Plaintiffs cannot succeed on their federal claims without convincing a fact finder to reach a different result on these issue than did the Court of Appeals, the federal claims are barred by issue preclusion.

The collateral estoppel (issue preclusion) doctrine "bars the subsequent litigation of an issue necessarily adjudicated in a former suit." *In re Commitment of Heald*, 785 N.E.2d 605, 611 (Ind. Ct. App. 2003) (citations omitted). "This rule applies even if the second adjudication is on a different claim." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012). Indiana issue preclusion requires three elements: (1) "a final judgment on the merits in a court of competent jurisdiction"; (2) identity of the issues; and (3) "the party to be estopped was

28

a party or the privity of a party in the prior action." *Nat'l Wine & Spirits, Inc.*, 976 N.E.2d at 704. Because Defendants Sexton and Lehman seek to use collateral estoppel defensively, they must also show Plaintiffs had (1) "a full and fair opportunity to litigate the issue," and (2) it would otherwise not be unfair "under the circumstances to permit the use of collateral estoppel." *Id.* The defensive use of collateral estoppel to issues previously determined by Indiana's Court of Appeals is more than appropriate here.

Issue preclusion applies because there is a final judgment on the merits issued by the Court of Appeals of Indiana. *Matter of A.C.*, 198 N.E.3d 1. The parties here (DCS, Lehman, Sexton), were the same party below (as to DCS) or were in privy with DCS (Lehman and Sexton), as explained above. The Plaintiffs had a full and fair opportunity to litigate the probable cause, CHINS-6, and continued detention orders. In fact, they vigorously litigated those issues before the Court of Appeals. *Matter of A.C.*, 198 N.E.3d 1.

Further, the dispositive issues in this case were presented to and rejected by the state courts. First, the probable cause finding as to the CHINS-1 and CHINS-2 allegations were waived as moot by the Plaintiffs' failure to object to the court's CHINS-6 adjudication. *Id.* at *8-9. Moreover, by failing to object to the later CHINS-6 adjudication, the Plaintiffs have conceded that there was at least probable cause for the State to interfere with their family relationship. This is because a CHINS-6 adjudication requires a court to find by a preponderance of the evidence as follows:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> (1) the child substantially endangers the child's own health or the health of another individual; and
> (2) the child needs care, treatment, or rehabilitation that:
>> (A) the child is not receiving; and
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

*Matter of A.C.*, 198 N.E.3d at *10 (citing Ind. Code § 31-34-1-6). A preponderance finding necessarily means there was probable cause, and probable cause is a higher burden than a reasonable suspicion. *See Navarette v. California*, 572 U.S. 393, 397 (2014) (discussing reasonable suspicion standard for *Terry* stops in relation to probable cause and preponderance standards).

To succeed on their Fourteenth Amendment substantive due process claims (Counts One, Two, and Four), the Plaintiffs will have to prove that the Defendants lacked a reasonable suspicion of past or imminent abuse. *Ridener v. Indiana Department of Child Services*, 2022 WL 2658979, *6 (2022). But because the Court of Appeals has conclusively found that the child was a CHINS-6 by a preponderance of the evidence – in part because of the Plaintiffs' failure to object to that finding – the Defendants necessarily had reasonable suspicion of past or imminent abuse. That justifies the interference with the Plaintiffs' family relationship. Further, the Court of Appeals found that the continued detention of the child from the home was "in the Child's best interest," *Matter of A.C.*, 198 N.E.3d at *14, and the resolution of that issue precludes the Plaintiffs from arguing here that the placement of the child "in a kinship placement that taught principles and behavior directly contrary to the Parents' best judgment and religious beliefs" violated their substantive due process rights. ECF 30 ¶ 141.

To succeed on their free exercise claims, the Plaintiffs will have to prove that the Defendants (1) placed a substantial burden on their religious belief or practice (2) without a compelling governmental interest and (3) without using the least restrictive means. *Matter of A.C.*, 198 N.E.3d at *16 (citing relevant authority). But the Court of Appeals has held that the Plaintiffs' religious belief or practice was not substantially burdened because the CHINS disposition was not based on the Plaintiffs' refusal to affirm the child's gender identity, and

30

reunification was not based on gender identify affirmation. *Id*. Without proving a substantial burden, Counts Seven and Ten fail as a matter of law. Both of these counts are grounded in the allegation that the Defendants imposed a substantial burden on their religious beliefs or practices. The Court of Appeals has rejected that finding.

To succeed on the free speech claims, the Plaintiffs will have to prove that the Defendants (1) restricted them from discussing specific content (2) that was on a matter of public concern (3) without being narrowly tailored to serve compelling government interests. *Matter of A.C.*, 198 N.E.3d at *18 (citing authority). But the Court of Appeals held that the speech at issue here was private speech thus deserving of lessened free speech protections, that the state had a compelling interest in protecting the physical and mental health of the child, and that the speech restriction was narrowly tailored to further that interest. *Id*. at *18-19. With these facts conclusively established, the Plaintiffs cannot succeed on their First Amendment claims (Counts Eight and Nine).

The Plaintiffs had a full and fair opportunity to raise these issues before the state courts. The Plaintiffs, by the same counsel in this case, vigorously contested these issues before the Court of Appeals of Indiana. They have had their opportunity to argue these issues. Allowing them another bite at the apple would prejudice the Defendants. Quite simply, the Plaintiffs are collaterally estopped from relitigating these issues. The Fourteenth and First Amendment claims are res judicata and must be dismissed with prejudice.

### c.  The State Claims Are Res Judicata (Claim Preclusion)

The state RFRA claim is barred by claim preclusion. The Defendants incorporate their claim preclusion discussion of the federal claims here in relevant part. Specifically, elements one, two, and four of the claim preclusion analysis apply equally to the state law claims as they do to

the federal claims. The only element that differs slightly in this analysis is the third: the matter now in issue was or might have been determined in the former suit.

Nonetheless, the third element is also satisfied as to the state RFRA claim because the matters at issue for Plaintiffs' RFRA claim are essentially identical to a Free Exercise claim and were determined by the prior state appellate court opinion. To prevail on their RFRA claim against DCS, Plaintiffs must first show the CHINS "action substantially burdens a sincerely held religious belief." *Blattert v. State*, 190 N.E.3d 417, 421 (Ind. Ct. App. 2022) (citations omitted). The burden then shifts to the government to show the substantial burden was "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that interest." *Blattert*, 190 N.E.3d at 421; *see also* Indiana Code § 34-13-9-8(b). However, the issues here of the State's compelling interest, narrow tailoring, and the lack of substantial burden on Plaintiffs' sincerely held religious beliefs, were each conclusively determined by Indiana's Court of Appeals.

In *Matter of A.C.,* Indiana's appellate court held that because the child's "continued removal from the home was not based on the fact that [Plaintiffs] did not accept Child's transgender identity, and reunification is not contingent on [Plaintiffs] violating their religious beliefs and affirming Child's transgender identity," the CHINS dispositional order "does not impose a substantial burden on the Parents' free exercise of religion." *Matter of A.C.,* 198 N.E.3d at 16. The appellate court's reasoning included Plaintiff Mary Cox's acknowledgment that "no one from DCS ever made a statement to her indicating that DCS staff disapproved of the Parents' religious beliefs" and also affidavit testimony by the relevant DCS family case manager that the agency's decisions in the case were not based on Plaintiffs' religious beliefs. *Id.*

In addition, the appellate court held that the state had "a compelling interest in protecting [the child's] physical and mental health" because "[t]he CHINS-6 adjudication and the factual basis establish that Child's health was substantially endangered and that the care, treatment, and rehabilitation would likely not occur without the court intervention." *Id.* at 17. Further, the appellate court held that the child's "removal from the home is narrowly tailored to serve the State's compelling interest" because "maintaining Child's placement outside the home is essential to focus on treating Child's eating disorder and providing therapy, and Child's mental health evaluations both showed that Child suffered from significant psychological disorders and conditions." *Id.* Also, despite the child being placed outside the home, Plaintiffs still had "unsupervised visitation with the [the child]." *Id.* Therefore, the elements necessary to Plaintiffs'' RFRA claim here – i.e. substantial burden on sincerely held religious beliefs, compelling state interest, and narrow tailoring – were each conclusively determined by the Indiana Court of Appeals.

Additionally, it does not matter for res judicata purposes that Indiana's appellate court determinations were made in addressing a First Amendment free exercise claim under the United States Constitution, as the substance of Plaintiffs' RFRA claim in the instant suit based on the CHINS adjudication and the child's continued detention outside the home were litigated in the state court action and affirmed by the Indiana Court of Appeals. *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1037 (Ind. 1993) (holding that when a subsequent action re-litigates the same fact or issue adjudicated in a former lawsuit, "the first adjudication will be held conclusive *even if the second is on a different claim*") (emphasis added). Therefore, allowing Plaintiffs to assert those same claims in this collateral action by labeling them as an Indiana RFRA claim,

would impermissibly allow relitigation of those claims. *Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1003 (Ind. Ct. App. 2003) (citations omitted).

Equally significant, Indiana's RFRA statute merely codified and restored a nearly identical common law balancing test that was used by the United States Supreme Court to analyze First Amendment free exercise claims, prior to *Empl. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). *See also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014) (collecting authority). Indiana's RFRA was adopted in response to *City of Boerne v. Flores*, which held that the federal RFRA statute–which provides "broad protection for religious liberty" under a statutory strict scrutiny standard of analysis, intended to restore pre-*Smith* balancing–exceeded the scope of Congress's remedial authority as applied to the states, under Section 5 of the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997); *see also* 42 U.S.C. § 2000bb, *et seq.*; *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1754 (2020). Thus, Indiana RFRA "largely tracks the language" under federal RFRA. *Blattert*, 190 N.E.3d at 421, n. 1. Therefore, it makes no difference that Plaintiffs' reassert their claims under a state RFRA label, as the substance of the claim was conclusively determined by Indiana's Court of Appeals, thus satisfying the third res judicata element. *In re Adoption of A.N.S.,* 741 N.E.2d 780, 785 (Ind. Ct. App. 2001).

### d.  The State Claims Are Barred by Collateral Estoppel (Issue Preclusion)

As detailed above, the juvenile court dispositional order, as affirmed by the Indiana Court of Appeals, represents a final judgment on the merits in a court of competent jurisdiction. *In re R.H.,* 55 N.E.3d at 307–08; *see also* Ind. R. Trial P. 54(a)*;* Ind. R. App. P. 5(a). Further, Plaintiffs were the Respondent-Appellants in the prior action and opinion. Therefore, the first and third elements are clearly satisfied.

The second element is also satisfied as to certain issues affirmed by the state appellate court, including the sufficiency of evidence issues, and factual procedural posture of the CHINS action. Plaintiffs' malicious prosecution claim alleges that Defendants Sexton and Lehman: (i) "had no good faith factual or legal basis for the CHINS Action"; (ii) "had no probable cause to file or prosecute the CHINS Action"; (iii) continued to prosecute the CHINS action despite purported knowledge the evidence was insufficient; and (iv) acted maliciously. ECF 30 ¶¶ 162-67. Similarly, Plaintiffs' abuse of process claim alleges these Defendants: (i) lacked a good faith basis to pursue the CHINS; (ii) willfully ignored evidence showing there was no factual basis to pursue a CHINS; (iii) the CHINS was allegedly unsubstantiated after 5 months of litigation; and (iv) "their conduct was abusive, willful, malicious and designed to conceal Defendants' wrongful conduct and avoid public embarrassment." *Id.* ¶¶ 153-156. However, the facts conclusively determined in the CHINS proceeding, as affirmed on appeal, swiftly dispose of these claims.

The appellate court opinion reveals that DCS filed a CHINS petition in the trial court initially based on two grounds: (1) the child's "physical or mental condition was seriously impaired or seriously endangered due to the Parents' neglect", under Indiana Code § 31-34-1-1(1) (CHINS-1); and/or (2) the child's "physical or mental health was seriously endangered due to injury by the Parents' acts or omissions", under Ind. Code § 31-34-1-2 (CHINS-2). *Matter of A.C.,* 198 N.E.3d at 7. About 4 months later, DCS amended its CHINS petition by adding an allegation that the child "was substantially endangering Child's own health", under Ind. Code § 31-34-1-6 (CHINS-6). *Id.* One month post-amendment (and about 5 months since DCS initiated the CHINS), "the parties informed the court that they had ***reached an agreement***," where DCS agreed to dismiss the CHINS-1 and CHINS-2 allegations, "unsubstantiate and expunge the record of any reports related to [Plaintiffs]," and proceed solely under the CHINS-6 statute. *Id.* at

8 (emphasis added). The child "then admitted to being a CHINS-6, and the Parents *verified that they had no objection to Child's admission*." *Id.* (emphasis added). Based in part on these facts, the Indiana Court of Appeals "concluded that the Dispositional Order was not based on the dismissed CHINS-1 and CHINS-2 allegations and is consistent with the CHINS-6 statute and that sufficient evidence supports the trial court's determination that Child's continued removal is in Child's best interest." *Matter of A.C.,* 198 N.E.3d at 15.

Additionally, Indiana's Court of Appeals affirmed that the child "was adjudicated a CHINS because Child has an eating disorder that jeopardizes Child's health" (*Id.* at 19), and Plaintiffs had no objection to their child's admission to the CHINS-6 status "*or the factual basis for it,* which included that Child had an eating disorder fueled in part by Child's self-isolation from the Parents and that behavior was likely to reoccur if Child was placed back in the home with the Parents." *Id.* at 13 (emphasis added). Notably, the Indiana Court of Appeals also found no merit to Plaintiffs' *"*sufficiency of the evidence argument," which largely rested on their position "that the Dispositional Order is contrary to the CHINS-6 statute because the order is based on parental acts or omissions related to their repudiation of Child's transgender identity." *Id.* at 14. With these matters having been conclusively determined, Plaintiffs' tort claims are left with nothing but speculative claims of "malicious" conduct, insufficient to plausibly state a claim for relief from Defendants Sexton and Lehman. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And Plaintiffs clearly had a full and fair opportunity to litigate the relevant issues, as demonstrated from the thorough appellate opinion and numerous references to the events during the CHINS matter, and logic dictates that unfairness does not result merely because a litigant is dissatisfied with the court's disposition of a case. Consequently, preclusion bars and general principles of

comity demand that this Court dismiss Plaintiffs' tort claims against Defendants Sexton and

Lehman. *United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011).

### III.   Eleventh Amendment Immunity Bars All Claims against DCS and Any Official Capacity Claim, and the Plaintiffs Fail to State a Claim for Injunctive Relief

The Eleventh Amendment bars any claim for damages against the state in federal court,

with limited exception not relevant here. U.S. CONST. amend XI ("The Judicial power of the

United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State"); *see also*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66

(1989); *Cornell v. Miami Correctional Facility*, 2016 WL 5106952, *1 (N.D. Ind.) (citing *Sow v.

Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011)). DCS, an arm of the State of Indiana,

has not waived its sovereign immunity, and therefore the Eleventh Amendment bars any claims

raised against DCS here.

The State's sovereign immunity also reaches to any claim brought against the individual

defendants in their official capacities. State officials acting within their official capacity, like

these Defendants, are immune from litigation under the Eleventh Amendment, unless the state

waives immunity. *Meadows v. State of Ind.,* 854 F.2d 1068, 1069 (7th Cir. 1988) ("The

jurisdictional bar of the Eleventh Amendment also encompasses all of the defendants. The

amendment specifically bars official-capacity suits against state officials because the state is the

real party in interest in such suits"). Indiana has not waived its immunity. All claims against DCS

and the individual defendants in their official capacities must be dismissed.

The claim for injunctive relief does not get the Plaintiffs around Eleventh Amendment

immunity because there is no ongoing harm. The Plaintiffs move the Court to enjoin the

Defendants "from investigating or filing a CHINs action against the Parents because they will

not use cross-gender pronouns or names or otherwise affirm a viewpoint concerning gender identity that is contrary to their sincerely held religious beliefs and best judgment." ECF 30 at 31. The Plaintiffs are not entitled to injunctive relief because they fail to allege the likelihood that the harm could reoccur.

A limited exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), allowing a plaintiff to sue state officials in their official capacity for prospective injunctive relief to remedy ongoing federal law violations. However, this exception does not apply to this complaint because the substance of Plaintiffs' Section 1983 claims failed to plead facts plausibly seeking relief for ongoing violations of federal law.

The analysis under *Ex parte Young* merely requires the Court to "conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010). The Plaintiffs seek an injunction "prohibiting the Defendants from investigating or filing a CHINs action against the Parents because they will not use cross-gender pronouns or names or otherwise affirm a viewpoint concerning gender identity that is contrary to their sincerely held religious beliefs and best judgment." ECF 30 at 31. But the CHINS proceedings have concluded, and there is no allegation that the Plaintiffs are presently being investigated by DCS. A speculative fear of future state action alone, *see id.* at 4 ("the Parents have every reason to fear that the Defendants will employ similar methods…in their home again…"), is insufficient to establish an ongoing harm.

Moreover, child A.C. is now a legal adult and thus not subject to DCS oversight. The Plaintiffs allege that "[d]uring the 2020-2021 school year, A.C. attended the Indiana Academy…a residential high school…." ECF 30 ¶ 40. Moreover, the Preliminary Inquiry Report

the Plaintiffs reference in their amended complaint includes A.C.'s date of birth, demonstrating

that A.C. is a legal adult. (Exhibit 1: Preliminary Inquiry[5] at 1) (date of birth indicating A.C. is

over eighteen years of age). Accordingly, A.C. cannot be adjudicated a CHINS. *See* Ind. Code §

31-34-1-1 (a child in needs of services must be under the age of eighteen). Because there is no

possibility of ongoing harm, the injunctive relief claim must be dismissed.

## IV.     Qualified Immunity Bars All Individual Capacity Claims

The Defendants are qualifiedly immune from suit because there is a lack of caselaw

clearly establishing that parents have the constitutional right to be free from state intervention in

family relations where their child's wellbeing was seriously endangered by an eating disorder

and self-isolation resulting from a disagreement between the parents and the child over the

child's identity. The Plaintiffs will not be able to cite a case with facts sufficiently similar to this

one to overcome the qualified immunity defense.

Government officials are shielded from civil suit under the doctrine of qualified

immunity where they did not violate a clearly established statutory or constitutional right.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[A] clearly established right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Sivard v. Pulaski Cnty.*, 17 F.3d 185, 189 (7th Cir. 1994). Further, the U.S. Supreme Court

"has repeatedly told courts…not to define clearly established law at a high level of generality,"

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and therefore the right must be specifically

defined. "Qualified immunity gives government officials breathing room to make reasonable but

---

[5] The Court may consider the Preliminary Inquiry on this motion because the Plaintiffs' allegations refer to it and make it central to the complaint. *See, e.g.*, ECF 30 ¶¶ 72-76. The document thus essentially has been incorporated into the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("But we have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself…documents that are central to the complaint and are referred to in it….")

mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 743 (internal quotes omitted).

"Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and second, that this right was clearly established at the time of the conduct." *Doe v. Gray*, 2022 WL 602919, *4 (N.D. Ind.) (citing *al-Kidd*, 563 U.S. at 735). "The court may address either element first…though this circuit has endorsed analyzing the second element initially to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017)." *Id*. General assertions are insufficient to overcome qualified immunity, and it is the plaintiff's burden to put forth cases showing clearly established law. *See id* at *5. The Seventh Circuit has explained that qualified immunity in the child removal context does not require the court to "determine whether probable cause in fact existed at the time of [a caseworker's] removal decision. Rather, we may rule on qualified immunity grounds that a reasonable caseworker *could have believed* that probable cause existed and accordingly wouldn't have understood his actions to violate a constitutional right." *Xiong v. Wagner*, 700 F.3d 282, 290 (7th Cir. 2012) (internal citations omitted). Accordingly, "as long as [case]workers could have believed [child's] removal to be lawful, in light of clearly established law and the information [they] possessed, defendants are entitled to qualified immunity." *Id*.

The thrust of the Plaintiffs' First and Fourteenth Amendment arguments is that the Defendants removed their child because the Plaintiffs would not affirm the child's identity or use the child's preferred pronouns, in violation of their right to family relations, their religious beliefs, and their freedom of speech. Although the Court of Appeals has already conclusively established that that is not true—rather, the CHINS adjudication was based not on the child's

transgender identity but rather on the child's physical, mental, and emotional well-being, *Matter of A.C.*, 198 N.E.3d at *10—even assuming for the sake of argument that the CHINS adjudication was related to the child's identity, the Defendants are still entitled to qualified immunity because a reasonable case worker could have believed that there was probable cause to remove the child based on A.C.'s eating disorder and severe mental stress resulting from the disagreement between the parents and the child about the child's identity. There simply is no clearly established caselaw holding otherwise. Same for the continued detention of the child under these circumstances or placement of the child in a kinship home that affirms the child's identity and uses the child's preferred pronouns. Accordingly, the Defendants are qualifiedly immune because they could have believed that their actions did not violate a constitutional right.

## V.     The Plaintiffs Cannot Sue on Behalf of Their Adult Child

A.C., the Plaintiffs' child, is a legal adult. (Ex. 1 at 1). Therefore, the Plaintiffs cannot sue on A.C.'s behalf. Federal Rule of Civil Procedure 17 provides, "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. Pro. 17(a)(1). The Rule allows for representatives to bring suit, in relevant part, on behalf of minors or incompetents. Fed. R. Civ. Pro. 17(c). There is no provision for a representative capacity suit brought on behalf of a competent, legal adult. Any claim the Plaintiffs attempt to bring on A.C.'s behalf therefore must be dismissed with prejudice.

Rule 17's prohibition on one adult suing on behalf of another competent adult is consistent with the courts' "reluctance to extend the constitutional protections afforded the parent-child relationship to cases involving adult children." *Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005); *see also*, *Separation of Hinduism from Our Schools v. Chicago Public Schools, et al.*, 2021 WL 2036536, *7 (N.D. Ill.) ("The Court has not been able to identify any case in which a

parent of an adult child has been able to assert claims alleging interference with that child's religious upbringing"); *Sporer v. Waukesha County Courthouse-Family Court*, 2023 WL 4674159, *3 (E.D. Wis. June 16, 2023) (recommending dismissal because a parent "lacks standing to sue the police for injuries to her adult children"); *Williams v. Board of Education of City of Chicago*, 2022 WL 4182434, *5 (N.D. Ill.) (Although "parents have standing as a result of their right to direct the religious training of their children under both the Establishment Clause and the Free Exercise Clause," the court "found no case that extends that parental right to adult children"); *Separation of Hinduism*, 2021 WL 2036536 at *7; *Bergeron v. Rochester Institute of Technology*, 2020 WL 7486682, *4 n. 4 (W.D.N.Y.) ("The court notes that other jurisdictions have likewise found that a parent lacks Article III standing to bring an action against an institution of higher learning on behalf of their adult children"). Therefore, any claim asserted vicariously on behalf of A.C., a legal, competent adult, must be dismissed.

## VI.    The Plaintiffs Fail to State a Claim under the Fourth Amendment

The Fourth Amendment claims fail for three reasons. First, they are time barred. Second, the Plaintiffs cannot vindicate their child's Fourth Amendment seizure rights because they are personal rights that cannot be asserted vicariously. Third, any Fourth Amendment search claim fails because the Plaintiffs plead that they consented to any search.

### a.   Some of the Fourth Amendment Claims Are Time Barred

The Fourth Amendment claims were, in part, untimely. The Plaintiffs filed suit on May 31, 2023. ECF 1. Thus, the Plaintiffs missed the two-year filing period to bring their Fourth Amendment claims, insomuch as those claims relate to any alleged action the Defendants took prior to May 31, 2021. This includes the allegation that the parents were "seized" in their own

home on May 17, 2021, ECF 30 ¶ 150, and any Fourth Amendment activity that occurred during

the DCS home visit on May 17, 2021. ECF 30 ¶¶ 60-71.

Section 1983 claims "borrow the two-year statute of limitations for personal-injury

claims." *Johnson v. Sojka*, 2022 WL 815231, *1 (S.D. Ind.); *see also*, Indiana Code § 34-11-2-4.

The Plaintiffs' time-barred Fourth Amendment claims accrued on May 17, 2021, because that is

the date they knew or had reason to know of the injury which is the basis of the Fourth

Amendment claims. *Id*. (citing *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013))

The initial complaint was filed on May 31, 2023. ECF 1. Therefore, the statute of

limitations bars suit as it relates to any investigatory activity that occurred prior to May 31, 2021.

Accordingly, the Fourth Amendment claims are time barred to the extent they concern any

alleged act taken by the Defendants prior to May 31, 2021.

### b. The Plaintiffs Cannot Assert an Unreasonable Seizure Claim Based on the Child's Removal

To the extent the Plaintiffs seek to assert a Fourth Amendment claim based on the Child's

removal from the home, that claim fails because the Plaintiffs were not seized. "Fourth

Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v.

United States*, 394 U.S. 165, 174 (1969). "Freedom from search and seizure is a personal right

that may not be submitted on behalf of others." *Williams v. Indiana Department of Child

Services*, 2019 WL 3003906, *7 (N.D. Ind.) (dismissing parents' Fourth Amendment claim based

on children's removal) (citing *Young v. Murphy*, 90 F.3d 1225, 1236 (7th Cir. 1996)). The

Plaintiffs were not seized; instead, the parents claim that the Defendants removed their child. As

explained above, they cannot sue vicariously on behalf of their adult child, so they cannot seek to

vindicate any rights A.C. may have under the Fourth Amendment. And the new allegation in the

amended complaint that the parents themselves were "seized" by the Defendants when they

43

interviewed the parents at their home on May 17, 2021, ECF 30 ¶ 150, cannot be taken seriously. As discussed below, the Plaintiffs plainly consented to the interview in May 2021, and there are no plausible allegations of duress.  Because the parents lack standing to assert a Fourth Amendment claim on their own behalf based on the Child's removal, any Fourth Amendment seizure claim the Plaintiffs assert must be dismissed.

### c.   An Unreasonable Search or Seizure Claim Fails because the Plaintiffs Consented to the Defendants' Investigation

At any rate, the Plaintiffs admit that they consented to the Defendants' presence in their home during the investigation and to the Defendants' conversations with their minor children. These admissions are explicit. "Sexton asked if she could visit the Cox residence, and Mary agreed." ECF 30 ¶ 60. "On May 17, 2021, Sexton arrived at the Cox residence and interviewed all of the Parents' minor children in the presence of the Parents." *Id*. ¶ 61. The Plaintiffs also fail to allege that they objected to speaking the Defendants on May 17, 2021, and therefore their conversation with the caseworker on that day was consensual. And there are no allegations to indicate duress or coercion; indeed, the allegations are "inimical with duress." *Dircks v. Indiana Department of Child Services*, 2022 WL 742435, *21 (S.D. Ind.). Therefore, the Plaintiffs fail to state a claim for unreasonable search under the Fourth Amendment.

"It is well settled that a person may waive his or her fourth amendment rights by consenting to a search." *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976). Consent renders reasonable a Fourth Amendment search. As the Seventh Circuit has held, "*lacking consent*, a search or seizure pursuant to a child welfare investigation is reasonable under the Fourth Amendment only if supported by a court order, probable cause, or exigent circumstances." *Jerger v. Blaize*, 41 F.4th 910, 914 (7th Cir. 2022) (emphasis added) (citing *United States v. Ahmad*, 21 F.4th 475, 478 (7th Cir. 2021)). Thus, where consent is present, a

search or seizure is reasonable – and the court need not inquire as to whether a court order, probable cause, or exigent circumstances support the search or seizure. "[A] search [or seizure] authorized by consent is wholly valid." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

Consent is a "well delineated" exception to the Fourth Amendment's probable cause requirement that renders reasonable a caseworker's investigatory efforts. *See Doe v. Heck*, 327 F.3d 492, 513 (7th Cir. 2003) (citing *Schneckloth*, 412 U.S. at 219); *see also Michael C. v. Gresbach*, 526 F.3d 1008, 1015 (7th Cir. 2008) ("A consensual search is manifestly reasonable under the Fourth Amendment as long as it remains within the scope of consent"). Consent seizures are valid only if the consent was freely and voluntarily given. *Ahmad*, 21 F.4th 475, 478 (7th Cir. 2021). Consent is involuntary if it is tainted by acquiescence to authority or by government misconduct that overwhelms one's free will, such as illegal stops, detentions, or arrests. *Id*. (citing *United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009); *United States v. Jerez*, 108 F.3d 684, 695 (7th Cir. 1997)).

The complaint suggests only three Fourth Amendment search activities: the entry of Defendant Sexton into the home of the Plaintiffs, ECF 30 ¶ 60, Defendant Sexton's interview of the minor children, *id*. ¶ 61, and the "interrogation" of the Plaintiffs "at their home," *id*. ¶ 65. But the Plaintiffs admit that Mary Cox consented to Defendant Sexton's entry into the Plaintiffs' home, they admit that both Plaintiffs were present for the interviews of the minor children, and they fail to plead that they objected to the conversation with the caseworker at their home. *Id*. ¶¶ 59-71. Therefore, they have conceded that any Fourth Amendment search was reasonable as a matter of law by consent. The Fourth Amendment claim must be dismissed with prejudice.

## VII.   The Fourteenth Amendment Claims Are Barred by Absolute Immunity for Presenting Evidence to the Court

To the extent the Fourteenth Amendment claims are based on the Defendants' presentation of evidence to the court, or other steps taken to present the CHINS case to the court, the Defendants are absolutely immune from suit. This applies to any of the substantive due process claims (Counts One, Two, and Four) to the extent they are grounded in presenting evidence to the CHINS court, and especially to Count One, which is explicitly based on the presentation of evidence to the CHINS court. ECF 30 ¶¶ 125-137.

It is axiomatic that any injury allegedly caused by a caseworker's "testimony and other steps taken to present the case for decision by the court" is protected by absolute immunity. *Millspaugh v. County Dep't of Public Welfare of Wabash County*, 937 F.2d 1172, 1176 (7th Cir. 1991). Absolute immunity applies even where the testimony or presentation of evidence mislead the court, or where the caseworker had an improper motive. *Id*. at 1175 ("immunity that applies only when the defendant did no wrong is no immunity at all"). In determining whether absolute immunity applies, courts have taken a task-specific approach. *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir. 1992). The task performed by the government official, rather than the government official's title or position, determines whether absolute immunity provides a shield from suit. *Id*. Tasks that are intimately associated with the judicial process are protected by absolute immunity as a matter of public policy: like judges, witnesses and officers of the court should "be free of the harassment and intimidation associated with litigation." *VanWinkle v. Nichols*, 2015 WL 9275671, *9 (S.D. Ind.) (quoting *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001)). Also, the common law recognized witness immunity, and common law immunities apply in the Section 1983 context. *Id*. (citing *Briscoe v. LaHue*, 663 F.2d 713, 718 (7th Cir. 1981)). In line with this precedent, the Southern District of Indiana last year granted judgment on the pleadings to caseworkers on absolute immunity grounds as to parents' due process claims based on the

alleged withholding of evidence from the juvenile court in a CHINS proceeding. *Ridener*, 2022 WL 2658979, *5-7 (immunizing caseworkers from substantive and procedural due process claims).

As the *Ridener* court found, *Millspaugh* is controlling. In *Millspaugh*, mothers of children taken into custody by the county department of public welfare alleged a caseworker removed the children because she disliked plaintiffs' religion, initiated the proceedings without just cause, failed to furnish the court with material facts that would have been favorable to plaintiffs during custody proceedings, lied in her application for an ex parte order, and failed to provide adequate notice of custody hearings. *Millspaugh*, 937 F.2d at 1175-76. Plaintiffs argued that the actions of the caseworker were so far outside of what was lawful for a judicial proceeding, absolute immunity should not apply. The Seventh Circuit disagreed in part, holding that as to certain quasi-judicial actions, "[the caseworker's] motives in asking the court to do certain things, and her selection of evidence to present, lie at the core of the subjects to which absolute immunity applies." *Id*. Even assuming the social worker harbored improper motives and misled the court, "social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Id*. at 1176. The Court distinguished between the caseworker's quasi-judicial actions – to which absolute immunity applies – and the caseworker's investigatory actions. *Id*.

Like in *Ridener*, the only material allegations that appear to support Count 1 are that the Defendants misrepresented facts to the court. ECF 30 ¶¶ 125-137. But as the *Ridener* court held, substantive due process does not require defendants "to affirm under penalties of perjury to the truth of any facts and thus cannot be considered complaining witnesses" as in the Fourth Amendment context. *Ridener*, 2022 WL 2658979 at *5-6. Therefore, the Defendants "cannot be

stripped of absolute immunity in the substantive due process context because the reasonable suspicion standard does not require government officials to swear to facts." *Id*. at *6. The Defendants are absolutely immune to the Fourteenth Amendment claims to the extent they are grounded in presenting evidence to the CHINS court.

## VIII.   The Individual Defendants Are Immunized from the State Law Claims for Acting within the Scope of their Employment and Participating in the Court Proceedings

Indiana law shields caseworkers from liability in tort when they act within the scope of their authority and where they merely participate in the judicial process. Because these Defendants are alleged to have done no more than that, they are immune from the state law claims.

### a. The Defendants Acted within the Scope of their Authority

Defendants Lehman and Sexton are immune from the state law abuse of process claim (Count Four), malicious prosecution claim (Count Five), and the state RFRA claim (Count Eleven). ECF 30 at 21-23, 29-30. Indiana law immunizes the individual defendants from civil liability for acts taken within the scope of their employment. First, the Indiana Tort Claims Act bars suits against state employees where there is no allegation that the state employee acted in a manner that was criminal, clearly outside the scope of employment, malicious, willful and wanton, or calculated to benefit the employee personally. Ind. Code § 34-13-3-5(c). There are no allegations in this complaint to plausibly suggest that Defendants Lehman or Sexton acted in such manner.

Second, Indiana Code § 31-25-2-2.5 immunizes DCS employees specifically from personal liability for official acts done or omitted in connection with any duties performed under Ind. Code, Title 31. Plaintiffs' malicious prosecution and abuse of process claims both assert allegations based on Defendants investigations and assessments related to the CHINS action, as

well as Defendants required due diligence following the juvenile court's adjudication of the child as a CHINS-6. (Dkt. 1 ¶¶ 145-157); *Matter of A.C.,* 198 N.E.3d at 8. "There can be no dispute that conducting investigations of abuse allegations and making assessments of the individuals involved in such allegations are activities entirely encompassed within the DCS Defendants' job duties and thus fall within the scope of their employment." *Justice v. Justice*, 303 F. Supp. 3d 923, 944 (S.D. Ind. 2018). Because Plaintiffs' claims rely on the official acts of DCS officers and employees in performance of their statutory duties, Defendants are entitled to immunity from all state law tort claims, pursuant to ITCA and Ind. Code § 31-25-2-2.5.

### b. The Defendants Participated in the Judicial Process

Indiana grants immunity to a person who "participates, including testifying as a witness, in any judicial proceeding or other proceeding: (A) resulting from a report that a child may be a victim of child abuse or neglect; or (B) relating to the subject matter of the report." Ind. Code. § 31-33-6-1(a)(6). Absent gross negligence or willful or wonton conduct, these provisions unambiguously provid[e] immunity from any civil liability 'that might otherwise be imposed *because of such actions.'" F.D. v. Indiana Dep't of Child Servs.,* 1 N.E.3d 131, 140 (Ind. 2013) (emphasis in original) (internal citations omitted); *see also* Ind. Code § 31-33-6-2 (providing exceptions to immunity under Ind. Code § 31-33-6-1). The thrust of these provisions is to: "encourage effective reporting of suspected child abuse or neglect"; "provide prompt investigation of reports of child abuse or neglect"; and "provide protection for an abused or neglected child from further abuse or neglect." *Anonymous Hosp. v. A.K.,* 920 N.E.2d 704, 709 (Ind. Ct. App. 2010) (*citing* Ind. Code § 31-33-1-1).

Plaintiffs' tort claims against Defendants Sexton and Lehman relate to investigation, assessment, and due diligence under the ongoing case plan based on the reports submitted to the

court by the agency, which are directly related to the CHINS adjudication. *Id.* By implication, the entire nature of Plaintiffs' tort claims allege they were harmed as a result of the loss they purportedly suffered because of the CHINS adjudication. (Dkt. 1 ¶¶ 145-157). Therefore, Plaintiffs claims connected to the CHINS proceedings fall under the protection afforded by Ind. Code § 31-33-6, *et seq.,* as the preclusive effect of the prior Indiana Court of Appeals opinion leaves no evidence of conduct rising to the requisite level of scienter necessary to be removed from the statute's protections. Ind. Code § 31-33-6-2.

## CONCLUSION

All claims against the Defendants should be dismissed with prejudice.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Atty. No. 20-10517

Date:   <u>September 29, 2023</u>   By:   Alexander R. Carlisle, Atty. No. 34533-49
Katherine A. Meltzer, Atty. No. 37932-49
Deputy Attorneys General

OFFICE OF THE ATTORNEY GENERAL
Indiana Gov't Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-6667
Fax:  (317) 232-7979
Alexander.Carlisle@atg.in.gov
Katherine.Meltzer@atg.in.gov

*Attorneys for Defendants*