UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY COX and<br>JEREMY COX,<br><br>Plaintiffs,<br><br>v.<br><br>INDIANA DEPARTMENT OF CHILD SERVICES,<br>CANDACE SEXTON, in her individual capacity, and<br>ANNETTE LEHMAN, in her individual capacity,<br><br>Defendants. | ) | No. 1:23-cv-00957-RLY-MG |

**ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

In May 2021, the Indiana Department of Child Services ("DCS") initiated an investigation into the wellbeing of A.C., the child of Plaintiffs Mary Cox and Jeremy Cox. DCS filed a petition in state court alleging A.C. was a Child in Need of Services ("CHINS"), due to neglect by Plaintiffs, based on purportedly false allegations made by DCS employees. A.C. is transgender. Plaintiffs contend that the basis for the CHINS petition was that they declined to use a name or pronouns that affirmed A.C.'s transgender identity because doing so would have violated their religious beliefs and their best judgment as parents. At the initial hearing in the CHINS proceeding, the state court found probable cause that A.C. was a child in need of services and ordered that A.C. be removed from Plaintiffs' custody. Prior to the factfinding hearing, DCS unsubstantiated

the allegations of neglect against Plaintiffs and moved to dismiss those allegations, proceeding instead on the allegation that A.C. was a child in need of services based on self-endangerment.

Plaintiffs filed suit in this court against DCS and two DCS employees, Candace Sexton and Annette Lehman, bringing constitutional claims under the First and Fourteenth Amendments, a claim under the Indiana Religious Freedom Restoration Act ("RFRA"), and claims for malicious prosecution and abuse of process.

Defendants move to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the court **GRANTS in part** and **DENIES in part** Defendants' motion.

## I. Background

Plaintiffs are Christians who believe that sex is an immutable gift from God fixed by biology from birth. (Filing No. 57, Second Am. Compl. ¶ 20). Their religious beliefs about honesty prevent them from affirming views about sex and gender that are contrary to their religious beliefs, including by "referring to a child using pronouns or names that are inconsistent with the child's sex." (*Id.* ¶¶ 22, 24). Additionally, "based on scientific evidence and their own experience as parents," Plaintiffs "believe that using cross-gender pronouns or names inconsistent with a child's biological sex hurts children." (*Id.* ¶ 29).

In December 2019, Plaintiffs' child A.C. informed Plaintiffs that A.C. is transgender. (*See id.* ¶ 35). On May 14, 2021, DCS caseworker Sexton called Mary to discuss A.C. and "disclosed that A.C.'s school had reported a written note from A.C. claiming that [Plaintiffs] were heavily transphobic and that A.C. did not feel safe at

home." (*Id.* ¶¶ 50, 52). Sexton visited the Cox residence and interviewed Plaintiffs' children in the presence of Plaintiffs. (*Id.* ¶ 60). On May 28, 2021, Sexton and Lehman signed a Preliminary Inquiry Report, (*id.* ¶ 71), and DCS filed in state court a Verified Petition Alleging a Child to be a Child in Need of Services ("CHINS Petition") and a Request for Taking or Continued Custody, (*id.* ¶¶ 72, 74; *see id.* ¶ 117).

Plaintiffs allege that the Preliminary Inquiry Report, the CHINS Petition, and the Request for Taking or Continued Custody contained numerous misrepresentations, such as false statements about A.C.'s education and medical and mental health treatment. (*See id.* ¶¶ 77–101, 104–107). According to Plaintiffs, the Preliminary Inquiry Report and CHINS Petition focused on one primary claim—that Plaintiffs "were not emotionally supporting A.C. because they would not affirm A.C.'s identification as a girl or use cross-gender pronouns and names." (*Id.* ¶ 100). To the contrary, Plaintiffs maintain that they "were providing for A.C.'s physical, medical, educational, and mental health needs and were referring to and raising A.C. in a manner consistent with their religious beliefs and best judgment." (*Id.* ¶ 101).

The state court held an initial hearing on the CHINS Petition on June 2, 2021. (*Id.* ¶ 110). The court found there was probable cause that A.C. was a child in need of

services. (*Id.*; Filing No. 40-2, Initial Hearing Transcript at 5, 38).[1] Furthermore, the court granted DCS's request to remove A.C. from Plaintiffs' custody "in reliance on the Defendants' misrepresentations in the [Preliminary Inquiry Report] and CHINS Petition." (Second Am. Compl. ¶ 111). The court followed DCS's recommendation that A.C. receive a kinship placement that would affirm A.C.'s transgender identity, including by using A.C.'s preferred name and pronouns. (*Id.* ¶ 113). The parents were limited to a few hours of visitation one day per week. (*Id.* ¶ 120). Moreover, the court barred Plaintiffs from speaking about "transgenderism" with A.C. at visitation. (*Id.* ¶¶ 112, 120; Initial Hearing Transcript at 42–43).

Prior to the factfinding hearing, DCS unsubstantiated and moved to dismiss the allegations of neglect against Plaintiffs. (Second Am. Compl. ¶ 118). DCS proceeded instead under the CHINS-6 statute, Ind. Code § 31-34-1-6, with an allegation that A.C. was substantially endangering A.C.'s own health. *Matter of A.C.*, 198 N.E.3d 1, 7 (Ind.

[1] As discussed in footnote four below, the court understands Defendants' Rule 12(b)(1) motion to be a facial challenge to subject matter jurisdiction. In deciding a facial challenge, the court considers "additional facts set forth in [a plaintiff's] brief opposing dismissal, so long as those facts 'are consistent with the pleadings.'" *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 896 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Plaintiffs submit with their briefing the transcript from the initial hearing. The court considers information in the transcript that is consistent with Plaintiffs' allegations in the Second Amended Complaint.

Ct. App. 2022).[2] The state court subsequently issued an order finding that A.C. was a child in need of services under the CHINS-6 statute. *Id.* at 8. The state court further ordered that A.C. continue to be removed from Plaintiffs' home. *Id.*

Plaintiffs appealed the initial detention order and the dispositional order to the Indiana Court of Appeals. *Id.* at 6. The court affirmed the dispositional order but found that the initial detention order was moot and declined to address it. *Id.* at 6–7. Plaintiffs sought transfer to the Indiana Supreme Court, which was denied. *J.C. v. Ind. Dep't of Child Servs.*, 208 N.E.3d 1259 (Ind. 2023). Plaintiffs then petitioned the Supreme Court for writ of certiorari, which was denied. *M.C. v. Ind. Dep't of Child Servs.*, 144 S. Ct. 1084 (2024).

Plaintiffs bring claims against Sexton and Lehman, in their individual capacities, under 42 U.S.C. § 1983 for intrusion upon the autonomous family relationship under the Fourteenth Amendment; infringement on the right to care, custody, and control of children under the Fourteenth Amendment; violation of substantive and procedural due process rights under the Fourteenth Amendment; malicious prosecution; abuse of

---

[2] When considering a facial challenge to subject matter jurisdiction, the court may take into account "information that is subject to proper judicial notice." *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 896 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Federal Rule of Evidence 201(b)(2) allows courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). The court takes judicial notice of *Matter of A.C.*, 198 N.E.3d 1, the Indiana Court of Appeals decision from the appeal of the CHINS proceeding, as well as subsequent appeals taken by Plaintiffs, cited *infra*. *See Fosnight*, 41 F.4th at 922 ("We've long held that district courts can take judicial notice of public court documents and proceedings when considering a Rule 12(b)(6) motion."); *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts . . . .").

process; and failure to accommodate religious practice under the First Amendment. Plaintiffs allege that DCS compelled speech in violation of the First Amendment, committed viewpoint discrimination in violation of the First Amendment, violated their right to free exercise of religion under the First Amendment, and violated the Indiana RFRA.

Defendants moved to dismiss Plaintiffs' amended complaint under Rules 12(b)(1) and 12(b)(6).[3]

## II. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When a party raises a facial challenge to jurisdiction, the court may consider "'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice,' along with additional facts set forth in [a plaintiff's] brief opposing

[3] Plaintiffs subsequently filed a Motion for Leave to Amend Complaint. (Filing No. 43). Magistrate Judge Garcia granted in part and denied in part Plaintiffs' motion, permitting Plaintiffs to amend their complaint to remove claims brought on behalf of A.C. and their Fourth Amendment claim. (Filing No. 55 at 8). Plaintiffs then filed their Second Amended Complaint. (Filing No. 57). As Judge Garcia previously explained, the court decides the motion to dismiss on the closed briefing and acknowledges that the Fourth Amendment claim and the claims brought on behalf of A.C. addressed in the briefing are now moot. (Filing No. 55 at 8).

dismissal, so long as those facts 'are consistent with the pleadings.'"[4] *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 896 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). On a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing jurisdiction. *Ctr. for Dermatology*, 770 F.3d at 588–89.

## III. Discussion

Defendants raise a host of arguments they contend warrants the dismissal of Plaintiffs' claims. Defendants first argue that the *Rooker-Feldman* doctrine deprives the court of subject matter jurisdiction over Plaintiffs' complaint. The court agrees with the Defendants as to Plaintiffs' federal claims. Furthermore, the court finds it appropriate to relinquish supplemental jurisdiction over Plaintiffs' state law claims. Because *Rooker-Feldman* and the relinquishment of supplemental jurisdiction dispose of all the claims, the court need not reach the remainder of Defendants' arguments.

### A. The *Rooker-Feldman* Doctrine

In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (quoting *McClellan v. Carland*,

---

[4] Defendants do not specify whether they raise a facial or factual challenge to subject matter jurisdiction, nor do the parties provide a legal standard for Defendants' 12(b)(1) motion that could assist the court in assessing the nature of the challenge. Because Defendants base their 12(b)(1) motion on the allegations in the complaint and on judicially noticeable court proceedings, the court understands Defendants to be raising a facial challenge. *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) ("Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction."); *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 896 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)) (stating that courts may consider "information that is subject to proper judicial notice" in assessing a facial challenge to subject matter jurisdiction).

217 U.S. 268, 282 (1910)). That said, under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. *Rooker-Feldman* bars claims that "directly challenge a state court judgment or are inextricably intertwined with one." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (cleaned up) (quoting *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021)).

Plaintiffs argue that *Rooker-Feldman* does not apply to their case for three reasons: (1) their claims are not inextricably intertwined with the state court judgment because their injury was caused by Defendants' false representations in the CHINS proceeding; (2) they lacked a reasonable opportunity to raise their federal issues in the CHINS proceeding; and (3) they are not state court losers. The court discusses each argument in turn.

*1. Inextricably Intertwined*

Plaintiffs' federal claims center around the state court's finding there was probable cause that A.C. was a child in need of services and the state court's order at the initial hearing removing A.C. from Plaintiffs' custody. Their claims do not directly challenge the order. *See Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 389–91 (7th Cir. 2019) (concluding that federal lawsuit alleging defendants acted in concert to cause plaintiffs' livestock to be seized in violation of the Fourth and Fourteenth Amendments did not directly challenge state court orders to seize the animals, permanently place them for

adoption, or require reimbursement for animal care expenses). Accordingly, *Rooker-Feldman* only applies if Plaintiffs' claims are inextricably intertwined with the order.

A federal claim is inextricably intertwined with a state court judgment if the plaintiff's injury is caused by the state court judgment. *Hadzi-Tanovic*, 62 F.4th at 399. When "the injury is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 743 (7th Cir. 2016). The Seventh Circuit's decision in *Swartz* is instructive. In *Swartz*, a state court found there was probable cause the Swartzes' livestock were neglected and ordered seizure of the animals. 940 F.3d at 389. The animals were seized, and the State then filed animal cruelty charges against the Swartzes. *Id.* At a subsequent hearing, the state court ordered permanent placement of the animals for adoption. *Id.* at 390. The Swartzes then filed a federal lawsuit alleging that those involved in the seizure of the livestock provided false information in violation of the Fourth and Fourteenth Amendments. *Id.* The court held that the Swartzes' claims were inextricably intertwined with state court judgments because the state court's probable cause finding and ordered seizure produced the Swartzes' injuries—the seizure and subsequent permanent placement of their livestock. *Id.* at 391.

Here, Plaintiffs asserted injury is "the loss of the companionship of their child" and the resulting infringement on their speech, religious, and parental rights. (Second Am. Compl. ¶ 141; *see id.* ¶¶ 124–50, 164–205). Plaintiffs' injuries—the consequences of losing custody of their child for the five months preceding the dispositional hearing—were caused by the initial order removing A.C. from Plaintiffs' custody. Just as the

seizure of livestock in *Swartz* was effectuated by state court orders, the initial removal of A.C. was caused by the state court's initial detention order. Without that order, A.C. would not have been removed and Plaintiffs would not have been injured. *Rooker-Feldman* bars such claims.

Plaintiffs attempt to avoid this conclusion by asserting that their injuries were caused by Defendants' provision of false information to the state court in the Preliminary Information Report and CHINS Petition. To understand the Plaintiffs' argument, a review of the Seventh Circuit's decision in *Hadzi-Tanovic* is warranted. In *Hadzi-Tanovic*, the court overruled the "corruption exception" to the *Rooker-Feldman* doctrine, which had allowed litigants to circumvent *Rooker-Feldman* where judicial bias and corruption undermined the state court proceedings. 62 F.4th at 402, 404.

The court noted a limitation of its holding: "[W]e recognize that a handful of decisions from this court have held that *Rooker-Feldman* does not apply where plaintiffs seek damages for injuries caused not by state court corruption but by the fraudulent conduct of state court opponents." *Id.* at 406–07 (first citing *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002); and then citing *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014)). Because those facts were not before the court, it did not decide whether *Rooker-Feldman* should apply in such a case. Pointing to that language, Plaintiffs contend that *Rooker-Feldman* does not bar their claims because they seek damages for injuries resulting from the false statements made by DCS and its employees in the CHINS proceeding.

However, the weight of authority in the Seventh Circuit is that fraud by state court opponents will not prevent application of *Rooker-Feldman* where the ultimate cause of injury is the state court order (in other words, fraud by state court opponents does not prevent application of the typical *Rooker-Feldman* test). Even in *Hadzi-Tanovic*, the Seventh Circuit noted two such cases where *Rooker-Feldman* still applied: *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008), and *Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014). In *Kelley*, the Seventh Circuit held that *Rooker-Feldman* barred the plaintiff's claims that a debt collector fraudulently represented it was entitled to attorney fees:

> Because defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments. We could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees.

548 F.3d at 602, 605. In *Harold*, the court similarly concluded that the plaintiff's FDCPA claim was barred because the defendant's false statement about whether the creditor owned the judgment did not injure the plaintiff until the state court ruled against him. 773 F.3d at 885–87.

Further examples abound. *See Swartz*, 940 F.3d at 392 (holding *Rooker-Feldman* barred claims based on alleged conspiracy among defendants to "work[] in concert to give false claims of animal neglect to the court"); *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 383 F.3d 552, 556–57 (7th Cir. 2004) ("A finding . . . that defendants . . . conspire[d] to bring unsubstantiated lawsuits would undermine the state court's implicit holding that the state action was justified. . . . That this suit was cast as a

civil rights action is of no consequence."); *Garry v. Geils*, 82 F.3d 1362, 1368 (7th Cir. 1996) ("While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court."); *Mains v. Citibank, N.A.*, 852 F.3d 669, 677 (7th Cir. 2017) (holding *Rooker-Feldman* barred claims that "a RICO conspiracy by the defendants misled the state trial court . . . because they are dependent upon and interwoven with the state-court litigation"); *Pettit v. Ind. Dep't of Child Servs.*, No. 1:14-cv-00531-RLY-DKL, 2015 WL 133736, at *4 (S.D. Ind. Jan. 9, 2015) (Young, J.) ("Whether the evidence before the court was fraudulent and untrue is inextricably intertwined with the state court's orders because this court would have to examine the state court's reasoning for removing the children.").

The court finds these cases persuasive and concludes that *Rooker-Feldman* applies when an injury resulted from a state court judgment, "even when plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions." *Swartz*, 940 F.3d at 391; *see also id.* (explaining that *Rooker-Feldman* precludes jurisdiction despite a plaintiff's invocation of a civil rights conspiracy where "the injuries in the complaint were the practical result of a state court judgment" (citing *Crestview Vill. Apartments*, 383 F.3d at 554–56)). Indeed, in *Swartz*, the Seventh Circuit noted that the alleged conspiracy, in which the defendants worked together to give false claims of animal neglect to the court, "is the type of claim routinely dismissed under *Rooker-Feldman*." *Id.* at 392 (collecting cases). In this case, Defendants' allegedly false statements in the Preliminary Inquiry

Report and CHINS Petition do not change the fact that Plaintiffs' injuries are the practical result of the state court's probable cause finding and initial order removing A.C. from Plaintiffs' custody. This point is further illustrated by a hypothetical with only one change to the facts of this case: imagine that Defendants provided the same allegedly false information to the state court via the Preliminary Inquiry Report and CHINS Petition, but the state court concluded that A.C. should not be removed. In that case, Plaintiffs would not have lost custody of A.C. at the initial hearing or suffered the resulting infringement on their constitutional rights, and thus Plaintiffs would have experienced no injury. *See Hadzi-Tanovic*, 62 F.4th at 404 (applying a similar hypothetical and coming to the same conclusion).

In sum, because Plaintiffs' injuries from Defendants' false statements regarding Plaintiffs' care of A.C. were effectuated by the state court's initial detention order, their claims are inextricably intertwined with the state court judgment and *Rooker-Feldman* bars their claims.

*2. Reasonable Opportunity to Raise Claims in State Court*

Plaintiffs argue that they lacked a reasonable opportunity to litigate their claims in state court. "*Rooker-Feldman* applies only where the federal 'plaintiff had a reasonable opportunity to raise the [federal] issue'" in the state court proceeding. *Hadzi-Tanovic*, 62 F.4th at 399 (alteration in original) (quoting *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017)); *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999) ("[A]n issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.").

Whether a plaintiff had a reasonable opportunity to bring a claim depends on difficulties caused by state court rules or procedures, not opposing parties or issues of justiciability. *Hadzi-Tanovic*, 62 F.4th at 408; *see Jakupovic*, 850 F.3d at 904 ("The reasonable opportunity inquiry focuses not on ripeness, but on difficulties caused by factors independent of the actions of the opposing parties that precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures." (cleaned up) (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 534–35 (7th Cir. 2004))).

For example, in *Long*, the Seventh Circuit held that the plaintiff did not have a reasonable opportunity to raise her FDCPA and § 1983 due process claims in a state court forcible entry and detainer (eviction) proceeding where Illinois law "would have effectively precluded her from raising" those claims because they were not germane to possession. 182 F.3d at 559. Similarly, in *Brokaw*, the Seventh Circuit found that a child did not have a reasonable opportunity to raise her claims against her relatives and others for alleged violations of her constitutional rights in the state court proceeding where Illinois law limited the state court to "consider only the question of whether the minor is abused, neglected, delinquent, in need of supervision, or dependent." 305 F.3d at 668. Moreover, the plaintiff was not present at the first court hearing where she was adjudicated a temporary ward of the court and directed to remain in foster care, and she was not represented by a guardian ad litem or an attorney. *Id.*

In contrast, in *Swartz*, the court held that the plaintiffs had a reasonable opportunity to argue the welfare of their animals in state court where they took part in two adversary hearings on the issue, were represented by counsel, and were able to take

discovery. 940 F.3d at 392–93. The court noted that the plaintiffs could have filed motions for reconsideration, appealed the state trial court's orders, or "used any other method by which litigants in Indiana may place arguments on the record." *Id.* at 393. Notably, this court previously found that parents had a reasonable opportunity to litigate their claims in a CHINS proceeding:

> Pursuant to Indiana Code, Mrs. Pettit had an opportunity to be heard at the fact finding hearing and the dispositional hearing. Ind. Code § 31-34-11-1; Ind. Code § 31-34-19-1.3. Additionally, a parent has the right at both of these hearings to cross-examine witnesses and to introduce witnesses and evidence on behalf of the parent. Ind. Code § 31-32-2-3. Thus, Mrs. Pettit had the opportunity during the state court proceedings to present the claims that the abuse allegations were fabricated even if she did not know that a personal relationship existed between her ex-husband and the caseworker.

*Pettit*, 2015 WL 133736, at *4.

Here, Plaintiffs had a reasonable opportunity to litigate their claims in the state court proceedings. Unlike in *Long* and *Brokaw*, where Illinois law explicitly precluded the court from considering the claims that formed the basis of the federal lawsuits, nothing in Indiana law prohibited Plaintiffs from raising their issues in the CHINS proceeding. To the contrary, Indiana law afforded Plaintiffs the opportunity to be heard at the initial hearing. Ind. Code § 31-34-10-2(h)(1). As described in *Pettit*, Plaintiffs had the right to cross-examine witnesses and to introduce witnesses and evidence. 2015 WL 133736, at *4 (citing Ind. Code § 31-32-2-3). Furthermore, Plaintiffs appealed to the Indiana Court of Appeals, sought transfer to the Indiana Supreme Court, and petitioned the Supreme Court for writ of certiorari. *Matter of A.C.*, 198 N.E.3d 1 (Ind. Ct. App.

2022); *J.C. v. Ind. Dep't of Child Servs.*, 208 N.E.3d 1259 (Ind. 2023); *M.C. v. Ind. Dep't of Child Servs.*, 144 S. Ct. 1084 (2024). Their appeals also provided a reasonable opportunity to litigate their claims. *See Swartz*, 940 F.3d at 393.

Plaintiffs contend that their appeal did not constitute a reasonable opportunity to litigate the claims they now bring in federal court because the Indiana Court of Appeals held that Plaintiffs' appeal of the initial detention order was moot and did not determine the merits of Plaintiffs' federal constitutional claims as they pertained to the initial hearing. (Filing No. 39, Pls.' Resp. Br. at 9); *see Matter of A.C.*, 198 N.E.3d at 9 ("Here, no relief is available to the Parents due to any alleged error in the court's initial CHINS probable cause determination because the CHINS-1 and CHINS-2 allegations have been dismissed."). Notably, Plaintiffs argued to the Indiana Court of Appeals that it should consider their appeal of the initial order under the public interest exception to the mootness doctrine, but the court rejected that argument. *See Matter of A.C.*, 198 N.E.3d at 9. In any event, the reasonable opportunity inquiry depends on "state court rules [and] procedures." *Jakupovic*, 850 F.3d at 904. Just as the plaintiff in *Jakupovic* had a reasonable opportunity to raise his claims in state court, even though a guilty plea rendered his motion to modify bond conditions moot, *see id.*, the mootness of Plaintiffs' claims in their appeal did not undercut the reasonable opportunity to litigate their claims that Indiana law provided them.

*3. State Court Losers*

Plaintiffs argue that *Rooker-Feldman* does not apply because they are "trial court winners." (Pls.' Resp. Br. at 6–7). Because *Rooker-Feldman* applies only to "cases

brought by state-court losers complaining of injuries caused by state-court judgments," *Rooker-Feldman* would not bar Plaintiffs' claims if they were state court winners. *Exxon Mobil*, 544 U.S. at 284. Plaintiffs certainly were not state court winners of the initial hearing at the outset because the court granted DCS's request for taking custody based on the probable cause finding and the conclusion that A.C. was at risk of self-harm if A.C. remained in Plaintiffs' home. (Initial Hearing Transcript at 5, 38–40).

To support their argument that they are state court winners, Plaintiffs point to *Hadzi-Tanovic*, in which the Seventh Circuit stated that it was "not at all certain" that federal lawsuits "arising from state court civil proceedings that [were] later . . . invalidated would call on [the federal court] to 'review and reject[]' final state court judgments." 62 F.4th at 408 (alteration in original) (quoting *Exxon Mobil*, 544 U.S. at 284). The court did not decide whether *Rooker-Feldman* would apply in such instances because Hadzi-Tanovic's case did not implicate that issue, as she did not first obtain "an order setting aside the relevant state court judgment" before filing her federal lawsuit. *Id.* at 407–08.

Here, Plaintiffs allege that, prior to the factfinding hearing, DCS unsubstantiated and moved to voluntarily dismiss the allegations of neglect against the parents. (Second Am. Compl. ¶ 118). In their brief, Plaintiffs state that "the trial court accepted that

dismissal."[5] (Pls.' Resp. Br. at 7). This does not appear to be the type of invalidation the court contemplated in *Hadzi-Tanovic*. Plaintiffs do not allege that the state court *set aside* the detention order that it entered earlier, as the Seventh Circuit has referred to. *See Hadzi-Tanovic*, 62 F.4th at 408; *see also Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819–20 (7th Cir. 2010) (explaining that *Rooker-Feldman* would not apply to a subclass of "persons who won in state court (award set aside)"). As such, Plaintiffs are not state court winners as it pertains to the issues they raise in this lawsuit, and the *Rooker-Feldman* doctrine deprives the court of subject matter jurisdiction over Plaintiffs' federal claims.

**B. Supplemental Jurisdiction**

The court has supplemental jurisdiction over Plaintiffs' state law claims: malicious prosecution, abuse of process, and the Indiana RFRA. A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the court dismissed all of Plaintiffs' claims over which it has original jurisdiction.

As with any stage of the litigation, after federal claims drop out of the case, federal courts should exercise jurisdiction only if it would best serve "the values of judicial

---

[5] The allegation that "the trial court accepted th[e] dismissal" is not made in the complaint and is alleged, for the first time, in Plaintiffs' response brief. (Pls.' Resp. Br. at 7). In opposing a Rule 12(b)(1) motion, plaintiffs may "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see Halperin*, 70 F. Supp. 3d at 896 (applying *Geinosky* to a Rule 12(b)(1) motion raising a facial challenge to subject matter jurisdiction). Plaintiffs' allegation that the trial court accepted the dismissal is consistent with the pleadings. (*See* Second Am. Compl. ¶ 118).

economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "The general rule is that when as here the federal claim drops out before trial (here *way* before trial), the federal district court should relinquish jurisdiction over the supplemental claim." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). That said, exercising jurisdiction over state law claims is proper where "the appropriate disposition of the claims [is] crystal clear." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001); *see Ctrs., Inc. v. Town of Brookfield*, 148 F.3d 699, 704 (7th Cir. 1998).

Here, the proper disposition of Plaintiffs' state law claims is not crystal clear. Defendants raise multiple defenses in their motion to dismiss, all of which Plaintiffs contest with regard to their Second Amended Complaint. And given the early stage of this lawsuit, the merits of Plaintiffs' state law claims are not well developed. As such, the court relinquishes supplemental jurisdiction.

## IV. Conclusion

Defendants' Motion to Dismiss Amended Complaint (Filing No. 31) is **GRANTED in part** and **DENIED in part**. Plaintiffs' federal claims (Counts 1–3 and 6–9) are **DISMISSED without prejudice**. The court **RELINQUISHES** supplemental jurisdiction over Plaintiffs' state law claims (Counts 4–5 and 10). Final judgment shall follow by separate order.

**IT IS SO ORDERED** this 26th day of June 2024.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.